JOHN P. JOHNSON V. WILLIAM H. FURNISH.

1. AGENCY; *Contract Construed.* Where J., the owner of a tract of land, wrote to his agent R., authorizing him to sell the land for $475 cash, the purchaser to pay the agent's commission ; and thereupon R. executed a contract for the sale of the land to F. for $475 and his commission, the money to be paid as soon as the land was cleared of all tax incumbrances, and providing that J. executed a warranty deed, *held,* that such contract was not a time but a cash contract, and was not in excess of the authority conferred.

2. SPECIFIC PERFORMANCE, *Enforceable.* The contract above referred to was made with and in the name of F., but by an arrangement between F. and S. the land was to be conveyed to S., and R., without naming the purchaser, wrote to J. to make the deed to S. *Held,* That this arrangement was no fraud upon J., and though S. afterward declined to carry out his arrangement with F. or to take the land, the latter could enforce a specific performance of his contract with J.

*Error from Brown District Court.*

AT the May Term, 1882, of the district court, plaintiff *Furnish* had judgment against defendant *Johnson,* who brings the case here.    The nature of the action, and the facts, appear in the opinion.

*Albert Perry,* and *C. W. Johnson,* for plaintiff in error.

*Jas. Falloon,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action in the district court of Brown county, brought by defendant in error, plaintiff below, to compel the specific performance of a contract for the sale of real estate.    A decree was entered in favor of the plaintiff, and defendant alleges error.    The facts are these: In 1879, the land belonged to one J. S. Johnston, a resident of Illinois.    In the spring of that year he visited Brown county, and applied to one Rounsaville to act as his agent for the sale of the land, naming $480 as the price.    Nothing was done during that year, but in the spring of 1880 the

plaintiff applied to Rounsaville to purchase the land.   On
the strength of this application, Rounsaville wrote to John-
ston, asking if he still owned the land, and what was his
price.   Johnston replied that he would sell for $720.   To
this Rounsaville answered, saying that a neighbor offered the
sum of $475, part in cash, and part on time.   This letter
was dated June 8, 1880.   The name of the proposed pur-
chaser was not given.   On July 31, Johnston wrote, saying:
"We will take $475 cash, purchaser paying your commis-
sion."   On the strength of this letter Rounsaville, as agent
for Johnston, executed a contract of sale to plaintiff, in which
he recites that Johnston has sold to Furnish the land, describ-
ing it, for $475, and the commission of Rounsaville as agent,
"to be paid as soon as said Johnston has cleared the same of
the tax title and taxes thereon up to the year 1880, when
said Johnston is to execute his warranty deed to the sale."
This contract was placed on record.   The agent also wrote
to Johnston, as follows: "Your man says he has the money,
$475, ready for you, and now prefers to pay the cash rather
than to ask you for time on the 120 acres of land.   He will
settle with me for my commission, and you receive by return
express or mail, as you may direct, the sum of $475, in ac-
cordance with directions in your letter.   Make out deed in
favor of Luther Sperry, and inclose clear abstract of title up
to date."   It will be seen that in this letter the agent di-
rected a deed to Luther Sperry, although the person with
whom he had made the contract was the plaintiff, Furnish.
This was the first time that any name had been given to,
Johnston.   The facts in reference thereto are these: Furnish
intended to borrow from Sperry the money to make payment
of the land, but after some negotiations finally agreed to let
him have the land at an advance of $100 above the price he
was to pay, and so directed the deed to be made to him.
Upon an examination of the title it was found to be incum-
bered with a tax deed belonging to one Bierer.   Negotiations
were had with Bierer for the purchase of his tax title, but
they failed; so, at the instance of Johnston, a suit was

brought to set aside the tax deed.   This suit resulted in setting aside the tax deed upon the payment of the taxes and interest for which it had been executed.   This suit of course caused considerable delay, and the taxes, interest and costs charged against the land as the result of litigation amounted to over $200.   Sperry, tired of the delay, declined to carry out his contract with Furnish, and Furnish thereupon insisted upon the deed being made to himself.   This was the first intimation that Johnston had that Furnish was the real purchaser. In the meantime, Johnston, irritated at the delay, at the result of the suit to set aside the tax title, and evidently suspicious of the conduct of his agent, had written to his co-defendant, the present plaintiff in error, John P. Johnston. After some correspondence he finally sold the land, and conveyed it to said John P. Johnston.   Thereupon this suit was commenced to compel a specific performance of the original contract, which resulted, as heretofore stated, in a decree for the plaintiff; and now defendant claims that there was error in said decree, and for these reasons: "First, the contract of sale executed by Rounsaville, who, to say the most, was only a special agent, being unauthorized by the principal and in violation of his instruction, conveyed no equitable title to the land; second, the contract of sale, dated August 2, 1880, was a fraud and an imposition by the agent and Furnish on J. S. Johnston.   They had led J. S. Johnston to believe that a sale had been made to one Luther Sperry, and even after they claimed the contract was signed, directed the deed to the land to be made to Sperry; third, J. P. Johnston is a subsequent purchaser without notice."

We disagree with counsel, and think that upon the evidence none of the three reasons can be sustained.   Aside from the parol authority given to Rounsaville in 1879, there was the written authority from Johnston in 1880 to sell the land for $475 cash, net.   The contract executed by Rounsaville was not in excess of the authority conferred.   It purported to sell the land for $475, the same to be paid as soon as the land was cleared of incumbrances.   This was not as counsel

contend, a time contract, but a cash transaction. It only stipulated for that which the purchaser was entitled to upon the authority given in the letter, and that was a clear, unincumbered title, and an ordinary warranty deed. Certainly, when the owner of real estate authorizes a sale of it, he means, in the absence of special words of restriction, that the real estate shall be unincumbered, and that he will make an ordinary warranty deed. Johnston's letter to Rounsaville authorized him to make the contract which he did in fact make, and the contract when made was binding on Johnston.

Again, the contract was no fraud upon Johnston; neither was there any imposition practiced upon him in directing the deed to Luther Sperry. It was nothing to him as to who should be named as grantee in the deed. All that he had a right to insist upon was the $475 in cash, and whether the purchaser wanted the deed made to himself, his wife, a child, or a stranger, was a matter which in no manner concerned the vendor, and gave him no ground of complaint.

Again, the delay in the accomplishment of the sale resulted only from Johnston's efforts to remove the tax title from his land, and was not a matter for which the purchaser was to blame, or which in any way affected the validity of the contract or the rights of the purchaser therein. Again, John P. Johnson had read the contract of sale before he took his deed from John S. Johnston, and was therefore not a purchaser without notice. We think, therefore, in conclusion, that the findings of fact were justified by the testimony and compelled the decree which was made, and it will be affirmed.

All the Justices concurring.