# JOHNSON v. JONES *et al.*

No. 2732.   Opinion Filed June 11, 1913.

Rehearing Denied September 23, 1913.

(135 Pac. 12.)

1. **PARTNERSHIP—Partnership Debts—Liability of Retiring Partner.**  Where one partner sells his interest in the partnership property to the other, with the agreement that the continuing partner shall assume and pay all the partnership debts, and the sale is made with full knowledge, agreement, and consent of the creditors of said partnership, the retiring partner, as a matter of law, ipso facto, becomes surety only for such debts, and if the creditors, having such knowledge of such agreement, consent thereto and permit the continuing partner to dissipate, or negligently lose, or dispose of, the partnership property, upon which they have a lien, the surety is discharged to the extent that he may be prejudiced thereby.

2. **PRINCIPAL AND SURETY—Release of Surety.**  Where a creditor of a partnership, having in his hands any securities or means of satisfying his debt, relinquishes or loses it by his willful acts or through his negligence, the surety will be discharged; the surety being released by any act of the creditor which deprives him of his right of subrogation.

3. **INSTRUCTIONS APPROVED.**  Various instructions examined and held to correctly state the law under the facts of this case.

4. **REQUESTED INSTRUCTIONS DISAPPROVED.**  Instructions examined and held to be erroneous under the prevailing theory of the case.

5. **APPEAL AND ERROR—Reference—Statutory Provisions—Discretion.**  The granting of an order directing the reference of a case is within the sound discretion of the trial court, and will not be inquired into here, unless it affirmatively appears that there was a gross abuse of discretion.

6. **APPEAL AND ERROR—Review—Verdict.**  A general verdict on conflicting evidence presumptively includes a finding of all the facts necessary to establish the prevailing party's claim.

7. **PARTNERSHIP — Actions — Attachment — Grounds—Nonresident Partner.**  Rev. Laws 1910, sec. 4812, authorizing an attachment where one of several defendants is a nonresident, does not authorize an attachment on the individual property of a nonresident partner for a partnership debt.

8. **CHATTEL MORTGAGES—Release—Attachment.**  An attachment of mortgaged chattels by the holder of the mortgage thereon destroys the mortgage lien.

(Syllabus by Robertson, C.)

*Error from District Court, Grady County;*
*J. T. Dickerson, Special Judge.*

Action by E. B. Johnson, guardian, against W. P. Jones and another. Judgment for defendant Jones, and plaintiff brings error. Affirmed.

This action was commenced in the district court of Grady county May 28, 1909, by E. B. Johnson, guardian, against W. P. Jones and R. M. Johnson. The plaintiff alleges in his petition that on December 2, 1908, defendants jointly executed to the plaintiff their certain note for the sum of $14,466.57, with interest thereon from date at the rate of 10 per cent per annum; that there had been paid on said note the sum of $4,371.06, leaving the balance, together with interest and $100 attorney's fees, due and owing on the same. Plaintiff filed his affidavit for attachment, alleging that R. M. Johnson, one of the defendants, was a resident of the state of Texas, and that the other defendant, W. P. Jones, was disposing of, and about to dispose of, his property and remove the same beyond the jurisdiction of the court for the purpose of defrauding and delaying his creditors. Garnishment summons was also issued and served on the First National Bank of Minco, as garnishee. The bank answered that it had no property or funds in its possession or under its control belonging to the defendant. No issue was taken on this answer. The defendant Jones denied the grounds of attachment under oath. On application of the plaintiff, a receiver was appointed by the court, who took charge of the attached property, and disposed of a portion thereof under orders of the court. The balance was retained in the hands of the receiver until the trial. At the first trial judgment was entered in favor of the plaintiff and against the defendant R. M. Johnson, sustaining the attachment as to him, and a judgment was entered against the plaintiff and in favor of defendant W. P. Jones, and dissolving the attachment as to him. The district court granted a new trial, on the motion of the plaintiff, as against the defendant Jones.

On June 6, 1910, defendant Jones filed his third amended answer, in which he alleged that, prior to the execution of the

note sued on, he and his codefendant, R. M. Johnson, had been interested jointly, as partners, in certain property purchased from the plaintiff, which was the consideration for the execution of certain notes signed prior to the date of the note sued on, and that, prior to the execution of the note sued on, the defendant Jones sold to his partner, R. M. Johnson, all his interest in the property, and the said R. M. Johnson assumed and agreed to pay all indebtedness outstanding against said property; that the plaintiff, E. B. Johnson, had knowledge of such agreement as to the terms of the sale, and agreed to accept said R. M. Johnson as his paymaster, and to release defendant Jones from liability on the notes; that, at the time said note sued on was executed, the defendant Jones was not indebted to the plaintiff in any sum whatever, and he executed the note sued on as surety for R. M. Johnson, and the plaintiff accepted such note, with the agreement and understanding that Jones was only surety thereon; that, at the time he executed such note as surety, plaintiff held a mortgage on about 40 head of hogs, of the reasonable value of $10 per head; that, at the time said note was executed, R. M. Johnson executed a mortgage on about 600 head of cattle, subject to a prior mortgage, and that the equity in said cattle amounted to about $7,000, and defendant alleges that, on the same day he executed the note sued on as surety, all of said property was more than sufficient to satisfy and discharge said note.

Defendant further alleges in his answer that there should be credited on said note $1,400 for sale of horses, $500 for sale of Jersey cattle, $1,200 rebate of rents for land, and that the 740 head of hogs had been sold by R. M. Johnson after the execution of the note sued on, and the proceeds thereof diverted by said R. M. Johnson, and applied as credit as agreed, on said note, which sum amounted to $7,400, and which, by the exercise of reasonable diligence, plaintiff could have secured the proceeds to apply on said note, and that defendant, as such surety, was entitled to have the said note credited with said amount, and, further, that defendant, as surety, was entitled to have the proceeds of 600 head of cattle applied as a credit on said note,

amounting to $6,000; that the defendant had sold about 100 head of hogs, upon which plaintiff had a mortgage, when the note sued on was executed, and paid the proceeds thereof to the First National Bank of Minco, amounting to $583, and that this sum should also be credited on said note; and defendant alleges that said note should have been fully paid from such proceeds of such mortgaged property, and therefore he, as surety, was released and discharged from liability thereon.

In addition to the answer, defendant filed a cross-petition against the plaintiff, in which he alleged that the attachment was wrongfully issued and had been levied upon the property of the defendant of the reasonable value of $5,000, and asked judgment over and against the plaintiff for said sum. He further alleged that plaintiff was indebted to him for certain material and lumber furnished for the benefit of plaintiff, amounting to $243.50, and prayed judgment for that amount.

Plaintiff filed a special demurrer to that part of defendant's answer which alleged a cause of action for wrongful issuance of attachment, which demurrer was overruled by the court. Thereafter plaintiff filed a motion for an order from the court to appoint a referee, alleging that upon the answers of the defendant the action involved an accounting as between the plaintiff and defendant Jones, involving partnership property, mortgaged property, and claims and accounts between the parties embracing numerous items of labor, expense, proceeds of partnership property, proceeds of mortgaged property, and credits and accounts, which the defendant Jones claimed as credits upon the note sued on, and asserted that the rights of the parties would be more fully protected and more completely adjudicated in an accounting by a referee. This application and motion was denied by the court. On June 6, 1910, plaintiff filed his reply to the amended answer of the defendant Jones, in which he denied all the affirmative allegations contained in such answer, and also contested the allegations of such answer as to the credits claimed on such note and the amount and value of property claimed by the defendant, and alleged that the property attached formerly belonged to the partnership of Johnson & Jones,

and was left in the possession of defendant Jones by R. M. Johnson, with the understanding and agreement that said property should be delivered to the plaintiff and the value applied as a credit upon the note sued on, but that defendant Jones refused to deliver such property under such agreement, and the indebtedness claimed by defendant against the plaintiff for certain work, lumber, and material was never presented to plaintiff, as guardian, and payment was never demanded of plaintiff, and plaintiff had no knowledge of such items until the suit was filed. At the time of the trial the receiver filed his report, which showed that under order of the court he had sold all of the property attached, except some mares and mules, and had paid the expense of harvesting, marketing, feeding, and caring for such property, and had on hand at that time the sum of $1,435.62.

The cause was tried June 28, 1910, at which time plaintiff asked permission to withdraw his reply and to file a special demurrer to the sixth paragraph of defendant's answer, which permission was granted, and the court sustained such special demurrer, in so far as it related to the effect of the attachment on property other than that sold under the attachment and then in the hands of the receiver, and the right to hold that property which had not been sold and in the possession of the plaintiff, or receiver.

In the statement of the case to the jury, the defendant stated, in substance, that it was his contention that the attachment was wrongful, and that he was entitled to a return of all the property not sold, and to the proceeds of all the property that was sold by the receiver; that he would expect judgment against the plaintiff for labor, wages, and material in the sum of $342.50; that the defendant contended that the property attached, upon which plaintiff held a mortgage, was delivered by the defendant to R. M. Johnson; that the defendant R. M. Johnson was indebted to Jones in the sum of $1,200, and that it was agreed that, when R. M. Johnson had paid to the defendant such indebtedness, the defendant Jones would deliver the property, upon which plaintiff held a mortgage, to the plaintiff.

the value thereof to be credited on note, and 'that plaintiff by his attachment released and waived his mortgage. It was also insisted in this statement that the note in controversy had been fully paid. The court held under the issues formed by the pleadings that the burden was upon the defendant, whereupon evidence by both parties was introduced, and the jury instructed, and a verdict was returned for defendant against the plaintiff, dissolving the attachment, and directing the return of the property attached, or its proceeds,. i. e., three mares, three mules, the proceeds of 128 head of hogs, or $1,200, and a certain quantity of alfalfa hay, upon which verdict a judgment was entered, and plaintiff, feeling aggrieved, filed a motion for a new trial, which was overruled, and brings this appeal to reverse the judgment so entered.

*Bond & Melton* and *J. B. Dudley,* for plaintiff in error.

*F. E. Riddle,* for defendants in error.

Opinion by ROBERTSON, C. (after stating the facts as above). The assignments of error complained of by the plaintiff are grouped under four propositions as follows:

(1) The trial court erred in admitting evidence of the sales of property made prior to the execution of the note sued on, and in permitting the jury to take into consideration the proceeds from the sale of such property, in determining the credits to which the defendant, as surety, would be entitled, and in refusing to withdraw such evidence from the consideration of the jury on motion of the plaintiff, and in refusing to instruct the jury not to consider such evidence as requested by plaintiff.

(2) Instructions Nos. 9, 14, 19, and 23, given by the court to the jury, do not state the law of the case under the pleadings and evidence.

(3) Instructions Nos. 1, 2, and 3, requested by the plaintiff and refused by the court, state the law as applicable to the pleadings and evidence, and should have been given.

(4) The motion of plaintiff for the appointment of a referee should have been granted.

It was admitted at the trial by both plaintiff and defendant that the note sued on was executed to cover the balance of the old indebtedness of Johnson & Jones. It also appears that at the time this note was executed the parties had an accounting on all transactions prior thereto, and that the note represented the balance due.

Jones contends that when he sold out to R. M. Johnson in October, 1908, the plaintiff agreed to and did in fact release him entirely from such indebtedness; he also admits that he knew R. M. Johnson was selling the mortgaged property, and not applying the proceeds to the satisfaction of the note, but he also insists that plaintiff had like knowledge. The plaintiff insists, however, that even conceding that the sale, and the terms thereof, made Jones a surety only, yet he waived any right he might have had before the accounting as to property sold, or proceeds thereof, prior to the execution of the note sued on, by executing such note as surety, with knowledge of all the conditions, and without demanding an accounting before executing such note. Plaintiff contends that under the law a surety is only entitled to credit upon the indebtedness for whatever additional security the payee in the note had at the time the note was executed, and which may have been lost by reason of the negligence or want of diligence of the payee, and that such surety is not entitled to an accounting, or to credit, for the proceeds of property pledged to secure another indebtedness than the one upon which he claims to be surety.

Jones, the defendant, contends that, when one partner sells his interest in the partnership property, with the agreement that the continuing partner shall assume and pay all the partnership debts, and the sale is made with full knowledge, agreement, and consent of the creditors of said partnership, the retiring partner, as a matter of law, *ipso facto,* becomes surety only for such debts, and that, if the creditors, having such knowledge of such agreement, consent thereto and permit the continuing partner to dissipate, or negligently lose and dispose of, the partnership property, upon which he has a lien, the surety is discharged to the extent that he may be prejudiced thereby.

It is claimed by plaintiff that a large portion of the part-nership property was sold prior to the date of the execution of the note sued on, and it is in fact shown that something like 600 head of hogs were sold during the month of October to a Mr. Panel and the French-Webb Commission Company, where-as the note was executed in December following; but it is in-sisted by the defendant that plaintiff did not intend that the original indebtedness should be canceled or merged by the new note, but it was to be held as a live, subsisting contract and indebtedness, and still in full force and effect, and that the real purpose in giving the new note, dated December 2d, was to enable R. M. Johnson to execute and deliver the chattel mort-gage thereon, as additional security, and cites from the reply of plaintiff the following paragraph, to wit:

"That this plaintiff held a mortgage on all of said prop-erty which formerly belonged to the partnership of Johnson & Jones to secure the payment of the indebtedness sued on in this action"

—and urges that the indebtedness referred to was the original indebtedness owing to plaintiff at the time the sale was made from Jones to R. M. Johnson. In support of this contention, it is shown that the note of December 2d was secured by chattel mortgage only on the equity in a certain part of the property formerly owned by Johnson & Jones. Plaintiff, in his reply, further admits that he held a mortgage upon all the property formerly belonging to Johnson & Jones to secure the payment of the note sued on in this action. Therefore, if the hogs sold Panel and the French-Webb Commission Company were the property of the partnership, and if plaintiff, as he concludes, had a mortgage thereon, the defendant Jones was entitled to have the proceeds of such sale applied upon the debt of the partnership, and, as is insisted by defendant, that if he (E. B. Johnson, the payee) permitted R. M. Johnson to use the pro-ceeds of that mortgaged property for other purposes, the de-fendant, as surety, would have the right to have an offset to that amount.

From a consideration of the foregoing, it is apparent that the determination of this case, to a very great extent, depends.

entirely upon the verdict of the jury on the many complex issues of fact formed by the pleadings and all supported to some extent by the evidence.

The record, consisting of more than 300 pages of testimony, discloses an almost hopeless conflict between the witnesses on the important questions submitted to the jury; but, the verdict being general, and also being supported by evidence reasonably tending to uphold the finding, we are not at liberty to question the same, but must assume that the general finding of the jury includes a finding of all the necessary facts to constitute the claim of the party in whose behalf the verdict is returned. *Brewer v. Black*, 5 Okla. 57, 47 Pac. 1089; *Wrought Iron Range Co. v. Leach*, 32 Okla. 706, 123 Pac. 419. This being true, and especially since no objection to the verdict is made on the ground that it is not sustained by the evidence, we must dispose of the various questions raised as though there was no difference between the parties as to the facts.

As to the first proposition, *supra*, we are of opinion that, under the issues formed by the pleadings, the court was justified in permitting the jury to take into consideration the proceeds from the sale of property made prior to the execution of the note sued on, for the purpose of determining the credits to which the defendant, as surety, would be entitled.

In this case the lower court was of opinion that there was evidence sufficient to submit to the jury the question of whether or not the plaintiff, E. B. Johnson, consented to the sale of the property by Jones to his partner, R. M. Johnson, and that R. M. Johnson assumed and agreed to pay all outstanding debts, and that plaintiff, consenting to such sale, thereby bound himself to see that the proceeds of said property should be applied upon the indebtedness for which Jones was bound as surety, and the question of whether it should be so applied before, or subsequent to, the renewal of the note was immaterial, if it was the intent of the parties at the time of the renewal, December 2d, that such disposition was to be made. This was one of the issues decided by the general verdict of the jury, and it was determined against the contention of plaintiff. So it would make

no difference, so far as defendant Jones is concerned, if he did sign the note sued on without the credit of the Panel and French-Webb Commission Company sales in October, if it was, in fact, the intention and agreement of the parties to have it so considered at the time. The jury decided that he was entitled to such application and credit, and no such result could have been obtained except from the testimony on the issues framed by the pleadings.

In answer to the suggestion of plaintiff that the December note was a merger and final settlement of all prior outstanding debts owing by the partnership to plaintiff, the defendant asserts that he signed the same simply as surety, with a full understanding that the amount named therein was secured by chattel mortgage on the partnership property, and that while a new note was in fact given, yet the intention of the parties at the time was not to create a new indebtedness, but to treat the old indebtedness as valid and subsisting, the only object being to secure additional security, and the new note was given and intended as a basis for the chattel mortgage that day given and signed by R. M. Johnson alone. The condition of the record also induces this belief, as may be seen from the admission of the reply (Record, p. 96), where it is said "that this plaintiff held a mortgage on all of said property which formerly belonged to the partnership of Johnson & Jones to secure the payment of the indebtedness sued on in this action." Also, on page 130 of the record, is found an admission by plaintiff that: "There is one item mentioned in the answer, a credit of $580, that was paid to Mr. Johnson. We desire to admit that there should be a credit of $580 paid to Mr. Johnson"—and, as pointed out in defendant's brief as additional evidence that plaintiff did not intend to release or merge the original indebtedness into the December 2d note, the following testimony of plaintiff (Record, p. 377) may be cited:

Counsel for plaintiff:

"Q. I will ask you whether that is one of the old notes of Johnson & Jones. (Handing note marked Exhibit E.) A. It is. Q. What is the amount of this note? A. $3,885. Q. I will ask you if that is one of the notes. (Handing note marked

Exhibit F.)   A.   That is another, for $4,365.   Q.   I will ask you if that is one.   (Handing note marked Exhibit C.)  A.   Yes, sir; $8,684.60."

Counsel for plaintiff:

"If your honor please, we offer the notes in evidence, with the credits thereon, for the purpose of showing the balance due at the time the notes were executed, which is the only purpose for which we offer them."

Counsel for defendant:

"Objected to, if the court please, for the reason they are incompetent, irrelevant, and immaterial."

Counsel for plaintiff:

"We offer the notes for the purpose of showing the balance due the guardian, E. B. Johnson, by R. M. Johnson and W. P. Jones at the time the note sued on was executed."

So it may be seen that, if the note sued on was conclusive evidence of the amount due, there would have been no necessity of introducing the old notes.   And if plaintiff had a right to offer in evidence the old notes in order to show the amount due on the new one on the date of its execution, certainly defendant, as surety, should be permitted to offer evidence showing the incorrectness of such testimony.   These original notes, and mortgages securing the same, were held as collateral security for the note sued on.   They both secured the same indebtedness.   Certainly, then, the surety was entitled to have the property mortgaged, or its proceeds, applied on the indebtedness for which he, as surety, was bound.   We think the correct rule in cases of this kind is that found in 30 Cyc. 612, which provides:

"When a partnership is dissolved by the retirement of one of the partners, and the others agree with him to assume the firm debts, all courts admit that as between themselves the retiring partner becomes a surety for the debts.   It is also universally agreed that such an agreement cannot affect the rights of firm creditors to proceed against all the old partners in the collection of their claims against the firm.   But the courts differ on the question whether the firm creditors who have notice of such agreement are bound thereafter to observe the relationship of principal and surety thus instituted between the continuing and retiring partners.   The weight of authority both in England and in this country is in favor of compelling them to

observe it. But a number of courts, in very carefully considered decisions, have reached the opposite conclusion."

The courts of Alabama, Missouri, North Dakota, Ohio, Texas, and West Virginia hold to the contrary doctrine; but we believe the weight of authority, as well as the better reason, requires us to hold that, where the creditors have knowledge and consent to the agreement of the remaining partner to assume and pay the indebtedness of the firm, they thereafter can proceed against the retiring partner as a surety only. This being true, there was no error in permitting the introduction of this evidence, nor was it error to refuse to strike the same out after it had been introducd.

Under the assignments grouped under the second proposition, it is urged that the court erred in giving instruction No. 8 of the general charge. Said instruction reads as follows:

"You are instructed, gentlemen of the jury, that a surety, under the law, may be discharged and released from an obligation signed by him, as such surety, first, upon the performance of the principal obligation, or upon the tender of said performance duly made, second, by acts or omissions of the creditor in doing or not doing those things which it is the duty of the creditor to do or not to do to the extent such surety is prejudiced or injured by reason of such acts or omissions. And you are instructed, gentlemen of the jury, that, if you believe from the evidence in this case that at the time the defendant W. P. Jones signed the note sued on in this action said Jones signed such note as a surety, then it was the duty of the plaintiff guardian, E. B. Johnson, to use reasonable care and diligence in protecting and looking after the property pledged to him by the defendant R. M. Johnson, to secure the indebtedness evidenced by the note sued on herein, and if you further believe from the evidence that, by reason of the fault or neglect of the said plaintiff guardian, E. B. Johnson, such property was diverted and otherwise misappropriated by parties other than the defendant Jones, then, and in that event, said defendant Jones would be released, excused, and discharged from any indebtedness to the extent that he may have been prejudiced by reason of any of such acts of negligence upon the part of the said plaintiff guardian, E. B. Johnson, or his authorized representatives or agents."

If Jones, between the time of the sale to Johnson, his partner, and December 2d, the date of the note sued on, was by operation of law the surety for R. M. Johnson on the balance due E. B. Johnson, and E. B. Johnson during said time negligently permitted R. M. Johnson to dissipate or otherwise dispose of said property, and to divert the proceeds from its proper application on the notes or indebtedness, or if payments were made and not credited, as charged by defendant, on account of the negligence of plaintiff, then Jones, the defendant, was entitled to be exonerated and released as surety for such amount. This is the statute law of this state, as found in section 1056, Rev. Laws 1910. The principle therein enunciated is generally recognized in this country, as may be ascertained by reference to 32 Cyc. 216 *et seq.* and the cases there cited. The rule there stated is that, whenever a creditor, having in his hands any securities, or means of satisfying the debt, relinquishes or loses it by his willful acts, or through his negligence, the surety will be discharged, being released by any act of the creditor which deprives the surety of the right of subrogation. Counsel for plaintiff, in prosecuting this alleged error, do so under the theory urged in the consideration of the first proposition, *supra;* but, inasmuch as that theory was denied, it necessarily follows that this assignment must also fail.

Instruction No. 14 is next attacked. It is as follows:

"You are instructed, gentlemen of the jury, that evidence has been offered to show that during the month of September, 1908, that the defendant W. P. Jones sold his interest in said partnership effects to his co-defendant, R. M. Johnson, and that the said R. M. Johnson assumed and agreed to pay the indebtedness owed by them. You are instructed that such sale on the part of the defendant Jones to the defendant R. M. Johnson would not in itself change the relations of the defendant Jones to the plaintiff guardian, E. B. Johnson, from principal to surety, and that said W. P. Jones would still be a principal concerning such indebtedness as was owing the said plaintiff guardian, E. B. Johnson, at the time such sale is alleged to have been made, unless you should further find from the evidence that the said E. B. Johnson, guardian, consented to said sale, and agreed to release the said Jones as principal, and accept him as surety on said note."

It is urged that this instruction is misleading, in that it was not contended by Jones, either in the pleadings or evidence, that at the time he sold to R. M. Johnson the plaintiff agreed to release him as principal and accept him as surety. The record does not sustain this contention. In the third amended answer, found on page 77 of the case-made, is found the following:

"For further answer, this defendant admits signing the note sued on herein, but avers the truth to be that prior to the signing of said note he and the defendant R. M. Johnson had been jointly interested and partners in certain property which they purchased of the plaintiff, E. B. Johnson, guardian, and which was the consideration for the execution and delivery of certain notes prior to the execution and delivery of the note sued on herein, and long prior to the execution of said note sued on herein this defendant, with the consent and knowledge of plaintiff, herein, sold all his right, title, and interest within and to all the property owned jointly by this defendant and the said R. M. Johnson to the said R. M. Johnson, and said R. M. Johnson, under the terms and agreement of said sale, assumed all indebtedness, including the indebtedness for which the note in question was executed, and that said plaintiff, E. B. Johnson, guardian, had knowledge of the terms and conditions of said agreement and sale between this defendant and his codefendant, R. M. Johnson, and consented thereto, and thereby agreed to look to the said R. M. Johnson for said indebtedness and to release this defendant therefrom."

There is testimony in the record tending to sustain these allegations, and by the general verdict of the jury it must be presumed that a finding was made in favor of the defendant Jones on this question. Hence this assignment must also fail.

Instruction No. 19 is also criticised as being an erroneous statement of the law. It reads as follows:

"You are further instructed, gentlemen of the jury, that if you believe from the evidence in this case that at the time of the issuing of said attachment herein that the defendant W. P. Jones was about to remove his property, or a portion thereof, out of the jurisdiction of this court, with the intent to defraud his creditors, or had assigned, removed, or disposed of, or was about to assign, dispose, or remove any of his said property, with the intent to defraud, hinder, and delay his creditors, you should sustain the attachment issue as to the defendant W. P. Jones."

Plaintiff cites subdivision 1 of section 4812, Rev. Laws 1910, in support of his criticism, which subdivision reads as follows:

"First.  When the defendant, or one of several defendants, is a foreign corporation, or nonresident of the state."

Plaintiff insists that it was shown that the defendant R. M. Johnson was. a nonresident of the state of Oklahoma at the time the suit was instituted and the attachment issued, and that therefore under the foregoing statute the attachment as to Jones should have been sustained.  The lower court thought otherwise, and sustained his motion to dissolve.  In 4 Cyc. 431, it is said:

"An attachment on the ground of nonresidence will not issue against the joint property of the codebtors, where only one of them resides without the state."

In the case at bar the property seized and taken from Jones under the attachment process was not all. partnership property.  As to the individual property of Jones, there can be no doubt but that attachment would not lie, and it is the action of the court in dissolving the attachment on the individual property of Jones that plaintiff complains.  We think the true rule is stated in *Williams v. Muthersbaugh*, 29 Kan. 524 (*730), where it is said in the syllabus:

"In Kansas each partner is liable for the whole of the partnership debts, and a suit may be brought against any one or more of such partners to recover any one of such debts, and in such suit an attachment may be issued against any one or more of the defendants who. may be liable thereto; but the attachment can be maintained against only such of the defendants as have by their acts rendered themselves liable to an attachment, and partnership property may be seized in attachment cases whether the order of attachment runs against the entire firm, or against only a portion of its members, but the individual property of one member can never be seized by virtue of an attachment not issued against him, but issued against some other member of the firm."

The lower court did not err in giving the instruction.

Instruction No. 23 reads as follows:

"You are instructed that you will not consider the question of the mortgage, which plaintiff claims he held on the mares and mules now claimed by. defendant Jones, so far as it relates to said

mares and mules, as the plaintiff, by attaching said property, destroyed whatever mortgage lien he may have had by reason of said alleged mortgage, and, in determining the rights of said defendant Jones to said property, said mortgage will not be considered by you."

This instruction correctly states the law of the case. See *Dix v. Smith,* 9 Okla. 124, 60 Pac. 303, 50 L. R. A. 714; *Crismon v. Barse Live Stock Commission Co.,* 17 Okla. 117, 87 Pac. 876; Jones on Chattel Mortgages, sec. 565. The distinction urged by counsel, while ingenious, to our minds is fallacious, and will not stand.

We now come to the third proposition relied upon by plaintiff, viz., that the court erred in refusing to give requested instructions Nos. 1, 2, and 3. These instructions, had our conclusion as to proposition No. 1, *supra,* been different, would have correctly stated the law on plaintiff's theory of the case. Inasmuch as that theory cannot be sustained, it follows, of course, that the giving of these instructions would have been error.

The fourth and last contention is that the court erred in refusing to appoint a referee to hear and determine the issues in this case. Section 5019, Rev. Laws 1910, provides that the court *may* direct a reference in cases such as the one under consideration. The court is never required or compelled to do so. In this case the verdict of the jury as to the equitable defense set up by Jones was advisory only, yet the court, by approving the same, cured any error there may have been committed. We fail to see wherein plaintiff has been prejudiced by the failure or refusal of the court to direct a reference.

Considering the entire record as a whole, we can safely say that the parties have had a fair trial on the issues presented, and that substantial justice has been done, and, no error of sufficient magnitude to warrant a reversal appearing of record, the judgment should be affirmed.

SHARP, C., not participating.

By the Court: It is so ordered.