MAZDA OIL CORPORATION, a corporation, Plaintiff in Error,

v.

H. C. GAULEY, Defendant in Error.

No. 36654.

Supreme Court of Oklahoma.

Nov. 15, 1955.

Simons, Simons, Mitchell, Headrick & Munn, Enid, for plaintiff in error.

Ted R. Fisher, Watonga, and J. Howard Lindley, Fairview, for defendant in error.

PER CURIAM.

H. C. Gauley, defendant in error, brought action in the district court of Major County to recover damages to his farm occasioned by gas escaping from below the surface. Defendant claimed damage to growing crops and permanent damage to his real estate praying judgment for $32,020. The case was tried to a jury and a verdict returned awarding recovery in the sum of $14,852. The Mazda Oil Corporation, defendant in the trial court, against which judgment was rendered on the verdict by the jury, appeals.

For convenience the parties will be referred to as they appeared in the trial court.

The defendant corporation as lessee under an oil and gas lease drilled a well on plaintiffs' farm. Drilling was completed on or about 11-3-48 and the well produced oil. Plaintiff predicated his right of recovery from damages suffered to his property by reason of escaping gas from defendant's well and alleges negligence and want of care by defendant in one or all of several particulars, briefly stated as follows: Defendant was negligent in the manner of setting surface pipe in the well; in not taking proper precautions to prevent the escape of gas from the well to the upper structures and strata; in failing to properly cement the well to protect the upper strata from gas from producing sand; and negligence and want of care in failing to take proper action to prevent and stop escaping gas from the producing sands to the upper structures after the escaping of gas became known to the defendant.

Briefly stated the defense was that defendant's well was not the proximate cause of the alleged damage, the well never produced gas and defendant was not guilty of any actionable negligence.

The record is voluminous. The testimony includes that of both laymen and those specially trained in their particular field of study and experience whose testimony was calculated to shed light upon the complex situation arising in the case. The testimony and exhibits revealed the use of scientific tests relative to the physical aspects of an oil well and the condition of the soil surrounding it.

The Ringwood Oil Field, in Major County, is large in area, covering several sections. The well drilled by the defendant on plaintiff's farm was one of the first in the field. At the time it was drilled, gas in any considerable amount had not been discovered. Later, gas from what is known as the

Cherokee Sand was encountered at a depth of some 6,000 feet. It proved to be extensive in area and when released showed very high pressure.

Defendant denies that gas was produced from its well in any considerable amount at any time and that none came through or from it to plaintiff's damage. This constitutes a major issue in the suit.

Plaintiff's evidence in support of his claim reasonably tends to show that he had owned and lived on the farm involved since 1926 and conducted farming operations; that defendant had drilled a water well to a depth of 200 feet on plaintiff's farm for use in drilling the oil well, which water well was 40 feet north and 100 feet east of the oil well and some 50 or 60 feet from his home; the oil well was some 300 feet from the house; that when the drilling of the oil well reached 190 to 200 feet, a channel or fissure connecting the oil well and the water well was discovered; that such channel was large enough for cotton seed hulls used with the drilling fluid to pass through to the water well; that there were many manifestations of seeping and erupting gas on the farm; that in October or November of 1949 gas escaped from plaintiff's domestic water well located about 100 feet northeast of the defendant's water well; that the water from the domestic well came through pipes to plaintiff's home and at times had sufficient gas pressure to knock a glass from the hand; that this condition continued until spring of 1951; that gas and liquids erupted from a bradenhead valve on defendant's oil well; that drilling mud came into the domestic water well and it had to be abandoned and another drilled to a depth of 51 feet some 10 or 12 feet northwest; that it developed gas in the fall of 1950 and the following February, 1951, caught fire; that in June of 1950, defendant's water well was discovered to contain gas in sufficient amount to ignite; that on July 19, 1950, the defendant's water well started to erupt gas and water, the eruption at first reaching a height of some two feet and later increasing to approximately 200 feet, and continuing for a week; that an oil well identified as the Wilco started drilling on the offset west, one-fourth of a mile from the defendant's well; that at 240 feet and 340 feet gas blew from this well with great force, which caused a subsidence in the eruptions of the water well; that after the disturbance in the water well and the Wilco well, a large eruption occurred through a seismograph hole, also on plaintiff's farm, which hole was about 100 feet northwest of the defendant's oil well and some 40 feet to the northeast of the Wilco well; that on August 15, 1950, another eruption, southwest of the seismograph hole some 100 feet from the Wilco well, blew gas and other substances 15 feet in the air and affected an area 30 feet in diameter; that a similar eruption affecting an area 60 feet in diameter occurred southwest of the Wilco well, the last previous eruption subsiding as this one began; that this last eruption was stopped when heavy rain and water ran into the holes created by the eruptions and disappeared; that gas seepage killed a wind break of trees and other trees near plaintiff's house; that strips or spots of feed vegetation and later growing wheat began to die due to gas seepage first observed in the fall of 1951, the first such strip being some 45 feet from the oil well; that the area affected by gas seeping into the soil broadened, appearing in spots, eventually extending to 1600 feet; that a soil analysis showed the soil to be in numerous places saturated with gas; that the soil contained carbon-dioxide 300 times that of normal soils and such condition is not found normally elsewhere in Oklahoma or in plaintiff's community; that there was a definite source of seepage coming from one point; that the seepage only appeared near defendant's well and from a visual examination of the area it was confined to the quarter section in which defendant's well is located; that there was a gassy smell very close to the well and the area around the well had such odor, which odor disappeared 20 yards from the well but reappeared from the holes dug for soil analysis; that the vegetation slopped out from the oil well; that a substance identified as oil well cement in the form of small granules was washed from the defendant's water well and deposited nearby in considerable quantity; that

it is necessary to set and adequately cement surface pipe in drilling an oil well to protect the upper porous fresh water area above the lower impervious structure from hydrocarbons or salt water and to contain and control contaminating or dangerous substances that may come from below the impervious structure; that the surface pipe is usually ten and three fourths inches in diameter and when it is set to the proper depth is cemented in place; that in cementing this pipe the cement is pumped under pressure through the pipe until it returns from the bottom through the annular space around it to the surface; that when so set any deleterious and dangerous substances that come into the hole are contained; that defendant drilled to a depth below 6,000 feet to the Manning zone, the known producing area of the field, and the well produced oil; that defendant set 303 feet of surface pipe and used 180 sacks of cement; that 500 sacks of cement were used in cementing the drill pipe at the bottom of the well; that a mechanical test showed the surface pipe to be set in the impervious structure at an undetermined depth; that two reports of the defendant corporation to the Corporation Commission showed the bottom of the surface pipe to be 17 feet above the impervious structure; that the nearest previous drilling in the area was one half mile distant and accordingly little was known of the subterranean strata to be explored. Previous wells in the area, according to Corporation Commission records, had set at least 2,000 feet of surface pipe; the 180 sacks of cement used by defendant in cementing the surface pipe was the least amount used in any of the area drilling; the channel between the defendant's oil well and water well was an inch thick, and it would take approximately 3,350 sacks of cement to fill it and there were other channels or fissures extending out from the oil well under plaintiff's farm; sufficient pressure on an adequate amount of cement should have been exerted to fill the known channels and fissures and the surface pipe should have been set through the impervious structure of some 1,500 feet thickness and cemented therein; the impervious structure, until perforated, was suffi-cient to contain gas of any pressure released below it; there were sands explored by defendant's well capable of containing gas; such sands are above the Cherokee sand and could carry gas from that zone to defendant's well if released from the Cherokee; the defendant's oil well and wells known to have penetrated the Cherokee zone were uncemented in an extended area below the impervious structure to the top of the cement extending from the bottom; gas could travel through lower porous strata from these wells to defendant's well; the bradenhead on the oil well was opened and showed a puff of gas indicating a gas leak; the oil well cement came from defendant's oil well. Plaintiff's farm was damaged by escaping gas.

Defendant's demurrer to plaintiff's evidence was overruled.

From plaintiff's evidence standing alone a reasonable inference can be drawn that gas escaped from defendant's well, coming from the explored subterranean area, that the defendant was negligent in setting and cementing the surface pipe and that the negligence of the defendant was the proximate cause of plaintiff's damage. The demurrer to the evidence was properly overruled.

The evidence of defendant reasonably tends to show that the setting of the surface pipe and cementing of the well were conducted in a prudent and careful manner; that no gas had at any time been produced or encountered in the well or had passed through it to the damage of plaintiff's farm or crops; that the well as completed and used effectually sealed off any gas from below the impervious structure and none escaped; that there were other wells in the field capable, from the manner of construction and operation, of producing through the escape of gas therefrom the damage to plaintiff and that even if gas had been released from a zone unexplored by its well and traveled through other changeable porous strata to defendant's well it could not have come to the surface through the confines of its well.

At the close of all the testimony defendant renewed its demurrer to the plaintiff's

evidence and moved for a directed verdict. Both were overruled.

Three propositions of error are advanced by defendant as plaintiff in error on appeal. It is contended, first, that if a third party injected gas into its well and the gas escaped therefrom because of insufficient surface casing, such act of the third party was the proximate cause of the escape and defendant would not be liable; second, that there was no evidence of defendant's negligence in drilling, completing or operating its well, and, third, that the verdict and judgment are based on conjecture and speculation and not reasonably supported by the evidence.

We are unable to agree that the verdict and judgment were based on conjecture and speculation. While the evidence on behalf of plaintiff was circumstantial, it was sufficient to require the submission of the case to the jury and to sustain the verdict and judgment. From the verdict it is clear that the jury believed the witnesses produced by plaintiff. Although the evidence was conflicting, the jury was not compelled to accept that offered by the defendant. We have held this court would review a verdict founded on conflicting evidence only for the purpose of determining whether it was supported by competent evidence and that essential facts might be proved by circumstantial evidence, in which event it was not necessary that the proof rise to a degree of certainty which would exclude every other reasonable conclusion than the one reached by the jury. Wood Oil Co. v. Washington, 199 Okl. 115, 184 P.2d 116; Cities Service Gas Co. v. Eggers, 186 Okl. 466, 98 P.2d 1114, 129 A.L.R. 1278.

■ Reasonable inferences sufficient to support plaintiff's case can be drawn from the evidence. A reasonable inference which may be drawn from circumstantial evidence is itself proof and does not fade away in the light of positive proof to the contrary. Great Lakes Pipe Line Co. v. Smith, Okl., 271 P.2d 1112; Gypsy Oil Co. v. Ginn, 152 Okl. 30, 3 P.2d 714.

■ The duty of the defendant under the facts in evidence was plain. It is a matter of common knowledge that the inner earth contains powerful gaseous forces frequently found in proximity to and in connection with deposits of oil. The defendant, by its act of boring the well, undertook the burden and responsibility of controlling and confining whatever force or power it uncovered. The jury found that the defendant was negligent in failing to guard against the escape of gas from its well. It follows that defendant is liable for damages proximately resulting from its negligence.

Defendant takes the position under its first proposition of error, that plaintiff failed to prove that gas ever was in or came through defendant's well and that its evidence clearly negatives the possibility; that even if it had been negligent and gas passed through its well, the negligence of a third party in allowing the gas to escape was the proximate cause of plaintiff's damage and that it had no liability.

The only matter left for consideration under such contention is that of proximate cause under the circumstances argued by defendant.

At the time defendant started drilling operations, gas was a very probable substance of discovery. That such was not found on first exploration, as contended by defendant, does not relieve from the original duty or negative the element of required care predicated upon the probabilities as of the time the surface pipe was set, unless we are prepared to say that the injection of gas thereafter into the bore hole of the well, not through producing sands but through sands or porous areas capable of being charged therewith, may not reasonably be foreseen or anticipated, either by natural developments, negligent operation of other drillers, or by occurrences usual to the industry.

It does not appear that the escape of gas through defendant's well must have, in the absence of production from the sands explored thereby, been through the negligent act of a third party.

Under the facts and circumstances of the case we cannot say that the jury adopted this theory to the exclusion of others supported by evidence reasonably tending to support them. However, under applicable

rules of law, long established in this court, the verdict under the evidence accepted by the jury is sustained even if the gas escaped through defendant's well negligently drilled and operated although injected in defendant's well by the negligent act of a third party.

In the case of Oklahoma Natural Gas Co. v. Courtney, 182 Okl. 582, 79 P.2d 235, we held that one guilty of negligence or omission of duty is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time the negligent act as reasonably possible to follow, if they had been suggested to his mind.

We further held that assuming there was an intervening responsible agency which produced the injury, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only a condition, or remote cause is to be determined by ascertaining whether the agency which intervened was of such character, and the circumstances under which it occurred were such, that it might have reasonably expected that such agency, or a similar one, would intervene in such a way as to be likely to produce an injury similar to the one actually caused, if under the circumstances, the intervention of such an agency in the manner stated might have been expected in the usual course of events, and according to common experience, then the chain of causation extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause.

■ Even though there were separate independent acts of negligence which combined to produce the damage to plaintiff and there was no concert between defendant and a third party, either or both would be responsible for the entire result even if defendant's negligence alone might not have caused the injury. Caesar v. Phillips Petroleum Co., 187 Okl. 559, 104 P.2d 429; Phillips Petroleum Co. v. Vandergriff, 190 Okl. 280, 122 P.2d 1020.

■■ Tested by the rules of law above announced, we consider the evidence sufficient to present to the jury for determination the question of negligence and whether such was the proximate cause of plaintiff's damage. A general verdict on conflicting evidence presumably includes all the facts necessary to establish the prevailing party's claim. Johnson v. Jones, 39 Okl. 323, 135 P. 12, 48 L.R.A.,N.S., 547; Phelps v. Maline, 193 Okl. 239, 142 P.2d 849.

■ This court will not overturn a verdict of a jury and a judgment in accordance therewith in a negligence action where the evidence tends to support them. Great Lakes Pipe Line Co. v. Smith, supra.

It follows that there was no error in overruling the demurrer and refusing to direct a verdict for defendant.

■ The instructions of the trial court taken together and considered as a whole, fairly presented the law applicable to the issues. We find no error in the instructions given. The defendant does not challenge the verdict as being excessive.

On the entire record we are convinced that the defendant had a fair trial and that the verdict and judgment is reasonably sustained by the evidence.

The judgment is affirmed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner J. W. Crawford and approved by Commissioners Jean R. Reed and James H. Nease, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, BLACKBIRD, JACKSON and HUNT, JJ., concur.

HALLEY, J., dissents.