### PREST-O-LITE CO., Inc., v. HOWERY.

No. 23330. Oct. 30, 1934.

Davidson & Williams, for plaintiff in error.

Franklin H. Griggs, for defendant in error.

OSBORN, J. C. M. Howery, plaintiff, sued the Prest-O-Lite Company, defendant, in the district court of Tulsa county, for damages arising from the pollution of a stream flowing through plaintiff's premises. The cause was tried to a jury and a verdict was rendered for plaintiff for $1,500. From a judgment thereon, defendant has appealed.

Plaintiff's petition alleges that he is the owner of a small tract of land in the city of Tulsa; that the defendant operates a carbide plant a short distance west of plaintiff's premises, adjacent to a creek which flows through plaintiff's premises; that defendant negligently allowed certain poisonous and deleterious substances of phenolthalin methyl orange alkalinity, impregnated with lime and various chlorides, sulphates, and carbonates and insoluble silicates, with iron and aluminum, all in combinations harmful and dangerous to animal life and vegetation, to flow into said creek; that plaintiff kept livestock and poultry on his premises which had access to the waters of the creek, and, as a result of such pollution, he sustained the following losses: 2,000 chickens of the value of $1.25 each; 200 ducks of the value of $1.75 each; a brood sow of the value of $100, and 4 shoats of the value of $25; that two cows lost their calves and have been further damaged and depreciated in value. The answer was a general denial.

The petition was filed July 28, 1930. It was agreed that plaintiff could recover only for injuries sustained within two years prior to said date. Plaintiff testified that during the two years' time approximately 2,000 of his chickens died. On cross-examination he testified as follows:

"Q. Now, tell the jury how these chickens were affected? A. Well, sir, they just—some of them just fall over dead, and some of them would droop around for a few days, and they would just get so they couldn't walk, they would just set down and they never could get up any more. Q. And they would die, how many a day? A. Well, I have seen as high as 15 to 25. Q. You would find them dead in the morning when you went out? A. Yes, sir. Q. You think you averaged about 15 to 25 chickens that died every 24 hours, is that right? A. Yes, sir."

Plaintiff also testified that a brood sow and four shoats died, and that two cows lost their calves and were further depreciated and damaged in value. He also testified that the fowls and stock had access to the water in the creek; that he did not attempt to prevent them from drinking creek water, since at the time he did not know that there was anything wrong with the water. He further testified that he did not know why the fowls and stock died; that none of the chickens were examined to determine the cause of their death, but

that he did call a veterinarian to see his cow when it was sick. The veterinarian testified that the cow was suffering from enteritis or inflammation of the bowels, and he assumed that drinking the water from the creek was the cause of the trouble, since he could find no other cause therefor. He did not make an analysis of the water, but placed his hand in the creek water and noticed that it caused a "puckery" feeling.

Defendant's evidence was to the effect that the component elements and the process of manufacture of acetylene gas, which was manufactured at the plant in question, had been the same for 15 years. In November, 1930, and in January, 1931, defendants caused water from the stream to be analyzed, and it was shown that there was nothing in the water of a deleterious or harmful nature to animal life. It was further shown that the plant life growing in the stream and on the banks had not been affected in any manner.

It was conceded by plaintiff that no damage had been sustained by him subsequent to July, 1930, and from that time there were no poisonous, harmful or deleterious substances in the water.

It is noted that no proof was offered by plaintiff to show that the various substances mentioned in his petition, or any other poisonous or deleterious substances, were in the water during the time the damages were incurred. It is sought to sustain the recovery herein upon the hypotheses, first, that the water contained poisonous or deleterious substances, and, second, that the animals and fowls died as a result of drinking the water. Neither hypothesis is satisfactorily established by the evidence.

In the case of Schaff v. Ferry, 105 Okla. 259, 232 P. 407, it is said:

"* * * It is competent to prove negligence as any other fact, by circumstantial evidence, but in such case, the circumstances must be such as reasonably to lead up to and establish the fact sought to be proved. M., K. & T. Ry. Co. v. Greenwood (Tex. Civ. App.) 89 S. W. 810. It is elementary law that an inference of fact cannot be based on another inference, that a presumption cannot be based on another presumption. No inference of fact or of law is reliable that is drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves be presumed. As stated in U. S. v. Ross, 92 U. S. 281, 23 L. Ed. 707 (quoting from Starkie on Evidence p. 80):

" 'In the first place, as the very foundation of indirect evidence is the establishment of one or more facts from which the inference is sought to be made, the law requires that the latter should be established by direct evidence as if they were the very facts in issue.'

"It is also there said:

" 'The law requires an open, visible connection between the principal and evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. Best on Ev. p. 95. A presumption which the jury is to make is not a circumstance in proof; and it is not, therefore, a legitimate foundation for a presumption.' "

It is a well-established rule that there must be a causal connection between the negligence averred and the injury received to entitle a person to recover. O'Neil v. Vie, 94 Okla. 68, 220 P. 853; Freeborn v. Holt, 100 Okla. 50, 227 P. 136.

In the case of Toombs v. Cummings, 151 Okla. 166, 3 P. (2d) 177, it is said:

" 'The "proximate cause" of an event must be understood to be that which in the natural and continuous sequence, unbroken by any independent cause, produces that event and without which that event would not have occurred.' Lusk v. Pugh, 71 Okla. 182, 159 P. 855."

In the light of these authorities the recovery by plaintiff herein cannot stand. While the proximate cause may be proved by circumstantial evidence, a recovery cannot be had by adding inference to inference or presumption to presumption, and the want of evidence cannot be thus supplied by deductions. If it had been proved that at the time the injuries were incurred, there were poisonous or deleterious substances in the water, harmful to animal life, or if it had been proved that the animals and fowls died as a result of drinking the water, a different situation would prevail, but the failure to prove one of these circumstances is fatal to plaintiff's right of recovery.

In the case of Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 P. 438, this court said:

"As a general rule, the proximate cause of an injury in negligence cases is a question of fact for determination by the jury, but this general rule has its exception. Where all of the evidence favorable to plaintiff, together with all inferences and conclusions to be reasonably drawn therefrom, is insufficient to point out clearly a causal connection between the alleged negligence of defendant and plaintiff's injury, and where no element of willful or intentional wrong is present, it becomes a

matter of law for determination by the court whether a verdict necessarily finding the alleged negligence to be the proximate cause of the injury finds sufficient support in the evidence, because it is an established rule in this state that a verdict based on speculation and conjecture will not be permitted to stand.

"A verdict must be said to be based on speculation and conjecture when, after considering all the evidence favorable to plaintiff, together with all inferences to be reasonably drawn therefrom, and excluding all evidence favorable to defendant, all unprejudiced minds must agree, from the facts and circumstances in the evidence, that any one of the several conclusions consistent with nonliability of defendant may as reasonably be drawn therefrom as is the conclusion of liability under plaintiff's theory of the case."

See, also, Lone Star Gas Co. v. Parsons, 159 Okla. 52, 14 P. (2d) 369.

In view of the foregoing rules, the trial court should have sustained defendant's demurrer to the evidence.

Defendant complains of a certain instruction given by the trial court, charging the jury that if defendant negligently allowed deleterious substances to escape from its plant into the stream and pollute the water to such extent as to cause death and injury to plaintiff's fowls and livestock, and that such negligence was the proximate cause of the damage, they should find for plaintiff. It is contended that the court should have limited the deletrious substances to those enumerated in plaintiff's petition. The instructions should be framed upon the issues made by the pleadings and the respective theories of the parties as shown by their evidence. Miller v. Price, 168 Okla. 452, 33 P. (2d) 624. The petition specifically alleges the various substances which plaintiff charged the defendant with allowing to escape into the stream. The gist of the alleged negligence, however, was the pollution of the stream by defendant. The instruction was broader than the allegation in the petition. On retrial the court should be careful to conform its instructions to the issues as made by the pleadings and evidence.

The judgment of the trial court is reversed and the cause remanded, with directions to grant a new trial.

RILEY, C. J., and SWINDALL, McNEILL, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and ANDREWS, J., absent.