CITIES SERVICE GAS Co. et al. v. EGGERS.

98 P. 2d 1114.

No. 28051.   Jan. 23, 1940.

Rehearing Denied Feb. 13, 1940.

G. A. Chappell, of Newkirk, and Hayes McCoy, F. H. Bacon, S. N. Hawkes, and A. M. Ebright, all of Bartlesville, for plaintiffs in error.

Howard F. Wilson, of Blackwell, for defendant in error.

RILEY, J. This is an action by Alice Eggers to recover damages arising from the pollution of the subterranean waters under her farm, allegedly caused by the defendants. The parties will be referred to as they appeared below.

Judgment in the amount of $1,375 was rendered for plaintiff.

Plaintiff's evidence shows that Bitter creek runs through a portion of her farm; that about eight miles north of plaintiff's farm the defendants own various oil and gas leases on which certain oil and gas wells have been operated for 15 or 20 years; and that during that time great quantities of water containing salt, oil, and other deleterious substances have been released from said oil and gas leaseholds into Bitter creek.

All parties concede Bitter creek, including that portion of plaintiff's farm, has been permanently polluted for 15 or 20 years.

Plaintiff's evidence further shows that her house, barn, and other improvements are east of Bitter creek; that in 1933, near the house and about 110 feet from the east bank of said creek, there was a drilled water well about 24 feet deep, which she had used over 20 years; that during 1933, because of the drouth and caving of the original well, it did not produce sufficient water to supply the needs of her farm; that in 1933, plaintiff had another well drilled a few

feet from the old well to a depth of 33 feet; that the new well furnished an ample supply of usable water until in 1935, when the same became so salty the water could not be used for domestic purposes; that it had been necessary for her to haul water for household uses for a year and a half; that the wells were the only source of water on the farm since Bitter creek became polluted.

A sample of water taken October 18, 1935, from Bitter creek near plaintiff's well tested 1,177.6 grains of salt per gallon, while a sample taken the same date from plaintiff's well tested 128.3 grains per gallon. Samples taken from the same places September 7, 1937, showed salt contents respectively of 2,365 grains per gallon and 137½ grains per gallon.

The uncontradicted evidence of the defendant shows that plaintiff's first well had been drilled to a soapstone formation which underlays most of the country in the vicinity of plaintiff's farm; that the new well, being deeper that the old well, had penetrated the soapstone formation and entered a coarse gravel stratum below; and that the water above the soapstone formation was uniformly good water, while that found below was usually hard or gyp water.

It was further shown that the water in Bitter creek was 16.9 feet below the curb of the new well, and when not being pumped, the water in the well would rise about 15 feet; that its level was then approximately the same as the level of the water in Bitter creek.

Defendants first contend there is no competent evidence that any salt water from the wells of any defendant entered plaintiff's well from natural causes.

Upon the fact that the water level in the creek and the well were approximately the same, an engineer, testifying as an expert in behalf of plaintiff, gave as his opinion that there was contact between the water in Bitter creek and the water in the well, and that the coarse gravel stratum into which the new well had been drilled was permanently destroyed and polluted by the water in Bitter creek; that in his opinion the pollution would become worse. He was further of the opinion that the pumping of the well had caused the polluted water from near the creek to travel through the coarse gravel stratum to the well.

The trial court permitted this witness to qualify and testify as an expert. It is within the discretion of a trial court so to do. Defendants do not seek to show an erroneous exercise of this discretion, by showing the witness was not in fact qualified as an expert. Instead they quote extensively from the testimony of their own witnesses much of which conflicts with that of said expert witness. Thus there is raised a question of the weight to be given conflicting evidence.

While this court will review a verdict founded on conflicting evidence, it is only for the purpose of determining whether it is supported by competent evidence and not to determine the weight of the evidence. Farmers State Bank of Newkirk v. Hess, 138 Okla. 190, 280 P. 305. Evidence reasonably tending to prove the essential facts, either directly or indirectly, or by permissible inference, is sufficient to sustain a judgment. Braniff v. McPherren, 177 Okla. 292, 58 P. 2d 871. And essential facts may be proved by circumstantial evidence, in which event it is not necessary that proof rise to a degree of certainty which will exclude every other reasonable conclusion than the one reached by the jury. Marland Refg. Co. v. Snider, 120 Okla. 116, 251 P. 989. See, also, Ramsey Oil Co. v. Dunbar, 172 Okla. 571, 46 P. 2d 535; State Bank of Seneca, Mo., v. Miller, 171 Okla. 253, 42 P. 2d 834.

Applying the above tests, we hold there is sufficient competent evidence to sustain the finding of the jury that salt water from Bitter creek entered and polluted the water in plaintiff's well. Though the above analysis of the evidence and conclusion thereon applies equally to all defendants, it is unneces-

sary, insofar as defendants Cities Service Gas Company and Cities Service Oil Company are concerned, to rely upon such analysis alone, because in a reply brief filed on their behalf only, it is stated: "That testimony of Mr. Stoldt (the engineer testifying for plaintiff) and all other testimony indicates that the connection between the formation in which the new well bottom was close and open to the creek. * * *"

Defendants next contend the proximate cause of injury to plaintiff's well, if any, was the continual pumping by plaintiff's windmill, which had the effect of "pulling" the water from the creek through the gravel water-bearing stratum into the well. Some of plaintiff's witnesses so testified, but the novelty of the contention is not lessened thereby. Defendants' citations and ingenious interpretation thereof fail to convince us that plaintiff does not have the right to drill one or many wells upon her land and take water from a subterranean water-bearing sand in its natural state.

The water in plaintiff's well was usable until 1935. By pumping, the level of the subterranean water was lowered, and when replenished, at least partially from the stream, it contained salt water. Except for pollution of the stream by defendants' acts, the replenished supply would have been usable. Pollution of the source is equivalent to pollution of the well itself, and the pumping by plaintiff was an exercise of a private right, in no sense the proximate cause of the injury.

Defendants next contend there is no competent evidence from which to estimate the amount of damage, if any, to plaintiff's land.

It is true plaintiff at first asked hypothetical questions wherein it was assumed the gravel water-bearing stratum under the entire farm was polluted with salt water from Bitter creek. This was improper because not based upon evidence reasonably tending to prove the entire stratum was polluted. But upon cross-examination of witnesses Lyon and Hess, the questions were limited to pollution of the stratum around plaintiff's well and based upon the assumption usable water could be found eleswhere on the farm. Both witnesses testified the decrease in value of plaintiff's farm because of such limited pollution was $1,600. This was sufficient competent evidence to sustain the jury's verdict of $1,375.

Defendants next contend that if there was damage to plaintiff's well it could have been mitigated by installation of a cistern, the reasonable cost of which was shown to be $180. In support thereof defendants cite City of Ada v. Smith, 73 Okla. 280, 175 P. 927, wherein it is held:

"The general rule is that a person injured by the negligence of another is bound to use ordinary care in the treatment of such injury and cannot recover enhanced damages arising from his neglect to exercise such care. * * *"

Plaintiff here is seeking to recover for the permanent injury to her farm because of pollution of the subterranean water. In Sackett v. Rose, 55 Okla. 398, 154 P. 1177, cited by defendants, it is held that the burden of proving mitigation of damages is upon the party guilty of the tortious act. Have defendants shown plaintiff, after discovering the pollution, neglected to do any act which enhanced her damages? We think not. Certainly failure to install a cistern did not enhance the damage to plaintiff's farm. Evidence as to the cost of installation of a cistern was properly admitted to show that such a water supply was available. This could be considered by the jury in determining the amount of plaintiff's damage, but not in mitigation thereof.

Defendant next contends that, since it is conceded plaintiff's right of action for damages for pollution of Bitter creek is barred by the statute of limitations, the instant action to recover for permanent damage to her well and the subterranean stratum of water is likewise barred.

It was specifically conceded by all parties that Bitter creek had been polluted with salt water and other deleterious substances for 15 or 20 years, and the court cautioned the jury no recovery could be had for pollution of Bitter creek.

In Commercial Drilling Co. v. Kennedy, 172 Okla. 475, 45 P. 2d 534, the first paragraph of the syllabus reads:

"In an action for damages for permanent injury to real estate caused by continuing salt water pollution, the statute of limitations begins to run at the time it becomes obvious that a permanent injury has been suffered. However, in a case where the injury grows progressively greater due to a continuation of the tortious acts, the statute of limitations bars recovery only for the damages flowing exclusively from that portion of the permanent injury which was obviously more than two years prior to the commencement of the action."

In Wilcox Oil & Gas Co. v. Murphy, 186 Okla. 188, 97 P. 2d 84, in discussing Comar Oil Co. v. Hackney, 119 Okla. 285, 250 P. 93, it was pointed out that in the latter case it was impossible for the operators of the oil and gas leaseholds to prevent escape of the pollutive substances causing the consequent damages to plaintiff's lands. Nevertheless we held "* * * plaintiffs were entitled under the measure of permanent damages to recover for partial permanent damages to their farms, and that a judgment rendered accordingly was a bar to any recovery by plaintiffs for such wrongful acts, past, present, and future, to a particular area, but is not a bar to actions by plaintiffs for such tortious acts of defendants thereafter as may damage other portions of the lands not included in the judgment. * * *" In the body of the opinion in Wilcox Oil & Gas Co. v. Murphy, supra, it was said:

"A cause of action for damages, referred to as permanent, accrues when the injury occurs, particularly with reference to injury to the second or additional area."

The cause of action in the instant case accrued when the pollution to plaintiff's wells occurred, which, as shown by the evidence, was within two years next preceding the commencement of this action. Defendants' contention is untenable.

Under contentions 6 and 7, defendants Cities Service Gas Company and Cities Service Oil Company, respectively, argue there is no evidence that any salt water from wells on their separate leaseholds entered Bitter creek before this action was commenced.

Defendants J. E. Hosack and G. A. Chappell, receiver for Junction Oil & Gas Company, a corporation, present no argument under this proposition. The evidence is overwhelming that several hundred barrels of salt water are deposited in Bitter creek from their respective leaseholds daily.

It is shown Cities Service Gas Company operated one gas well while Cities Service Oil Company operated three oil wells on their respective leaseholds. The above-mentioned engineer, testifying as an expert for plaintiff, stated that the surface around the wells located on the two leases drained directly into a tributary of Bitter creek; that the ground surrounding the wells was dead and thoroughly saturated with salt; that all the surface water from freshets and rains carried salt and other pollutive substances into Bitter creek as evidenced by unfavorable vegetable growth in and along the swales. He further testified that in his opinion salt water produced on these two leases penetrated the ground and found its way into the subsurface structure and thence into Bitter creek.

Defendants' evidence sharply conflicted with this testimony. Hence, we are confronted with the same legal principles involved and discussed under the first contention raised by defendants. As there stated, we cannot determine the weight to be given conflicting evidence, but are concerned only with determining whether there is competent evidence reasonably sustaining the verdict. Applying the principles governing the sufficiency of the evidence as set forth un-

der defendants' first contention, we find there is sufficient evidence to sustain the jury's finding that defendants Cities Service Gas Company and Cities Service Oil Company contributed to the pollution of Bitter creek.

Defendants' last contention is that, since plaintiff did not allege the pollution from the defendants' various leaseholds commingled or combined in Bitter creek to plaintiff's injury, the court's instruction, to the effect each defendant was liable for the injury caused by other defendants, is erroneous.

In Northup v. Eakes, 72 Okla. 66, 178 P. 266, the first paragraph of the syllabus reads:

"Where although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it."

In the body of the opinion it was said:

"* * * It is clear that while the lessees holding separate leases acted independent of each other, yet their several acts in permitting the oil to flow into the stream combined to produce but a single injury. In these circumstances each is responsible for the entire result, even though his act or neglect alone might not have caused it."

In Walters v. Prairie Oil & Gas Co., 85 Okla. 77, 204 P. 906, while discussing the above paragraph of the syllabus from Northup v. Eakes, supra, it was pointed out that this was a liberal exception in favor of riparian owners to the general rule that to make tort-feasors liable jointly there must be some sort of community in the wrongdoing, that is, injury must be in some way due to their joint work.

In her petition plaintiff alleges in the present tense that the defendants, owners of various leaseholds, bring to the surfaces thereof crude oil, salt water, basic sediment, and other deleterious substances, allow and permit the same to accumulate and "* * * each of them allow the same to escape from their said premises * * *" into Bitter creek. Plaintiff in effect says the defendants are now permitting salt water to escape into Bitter creek. By common knowledge, we know that salt water entering a stream from various sources will commingle therein and thus combine to cause any resulting injury.

The instructions are not erroneous.

Judgment affirmed.

WELCH, V. C. J., and OSBORN, GIBSON, and DAVISON, JJ., concur.