## SHELL PETROLEUM CORPORATION et al. v. BLUBAUGH.

No. 28213. April 30, 1940.

*102 P. 2d 163.*

George W. Cunningham, of Tulsa, Ralph J. May, of Oklahoma City, W. D. Simms, of Tulsa, and Wm. H. Zwick, of Ponca City, for plaintiffs in error.

Elmer S. Rutherford, of Tonkawa, and Cress, Tebbe & Cress, of Perry, for defendant in error.

OSBORN, J. This action was instituted in the district court of Noble county by Joe Blubaugh, hereinafter referred to as plaintiff, against the Shell Petroleum Company and the Continental Oil Company, hereinafter referred to as defendants, wherein plaintiff sought damages occasioned by the pollution of his premises by oil and salt water escaping from the oil operations of defendants. The cause was tried to a jury and a verdict was returned in favor of plaintiff. From a judgment thereon the defendants have appealed.

It appears that plaintiff is the owner of a fee-simple title to the west half (W½) of section 1, township 24 north, range 1 west, in Noble county, except as to certain mineral interests therein. The defendants were the owners of oil and gas leases covering the east half (E½) of section 2, township 24 north, range 1 west, which half section lies immediately west of plaintiff's land. Oil was discovered on said premises in the year 1923. From that date to the year 1928 approximately 85 wells were drilled in section 2. A small creek, known as Pasture creek, traverses the two half sections of land herein involved, running in a general northeasterly direction. It appears that great quantities of oil were produced by defendants from their leases, and from the date of the discovery of oil to the date of the trial, quantities of oil, salt water, and other deleterious substances escaped from the operations of defendants into Pasture creek and were deposited on the premises of plaintiff upon the soil adjacent to said creek. It is admitted by defendants that the evidence is sufficient to sustain the verdict of the jury insofar as pollution to the surface of the land is concerned. The controversial issues herein involved relate, in the main, to subsurface or subterranean pollution which plaintiff claims destroyed certain water wells on the premises. The verdict of the jury was for $6,130. The court submitted certain interrogatories to the jury for the purpose of determining the amount of damages awarded upon the various claims of damage asserted by the plaintiff. Said interrogatories and the answers are as follows:

"Interrogatory No. 1. How much, if any, damages do you allow for permanent injury to plaintiff's land?

"Answer: $5,000.00.

"Interrogatory No. 2. How much, if any, damages do you allow for the loss by death of any cattle, hogs or chickens?

"Answer: $750.00.

"Interrogatory No. 3. How much, if any, damages do you allow for money expended by the plaintiff for digging well or making fence on the pasture to which he removed his cattle?

"Answer: $380.00."

It appears that the damages for permanent injuries to plaintiff's land involved two elements of damage: First, damages to the surface of the land, and, second, subterranean damage or damage

to the fresh water strata underlying plaintiff's land. Reference is made to a map prepared and used in the trial of this cause which outlines a certain area in the vicinity of Pasture creek, as it traverses plaintiff's land, which is referred to as the polluted area. At a point 700 feet south of said polluted area there is located a water well which is referred to as the "south well"; 350 feet north of the polluted area there is located a water well referred to as the "north well." It is claimed by plaintiff that both of these wells were polluted by the operations of defendant companies. The alleged pollution thereof constitutes an integral portion of the permanent injury to the plaintiff's land which was considered by the witnesses in estimating the amount of plaintiff's damage thereto. The first and second propositions argued by defendants are as follows:

"Proposition 1. There is not a scintilla of evidence in the record to the effect that oil from defendants' operations polluted plaintiff's south well.

"Proposition 2. The record is void of any evidence that these defendants polluted plaintiff's north water well and the uncontradicted evidence shows that this well is not contaminated with either oil or brine."

We will consider first the evidence relating to the pollution of the south well. No contention is made that such pollution is in any manner attributable to the surface pollution. It is plaintiff's theory that such pollution was traceable to two abandoned oil wells located approximately one-half mile to the west of the water well; that these wells were not properly plugged, which permitted the escape of pollutive substances into the fresh water strata.

Plaintiff's testimony with regard to the south well was to the effect that in June or July, 1934, the well was producing good stock water. He testified further:

"Q. Now, how long did you produce that well there, after you moved your cattle on to the west half of section 1, in 1934? A. Well, I would say about five weeks all told. Q. What happened to that well, if anything, during the time you was pumping it? A. Well, about three weeks after we started pumping it, why Mr. Clifton told me, there was something gone wrong with that water. He said the stock don't want to drink it. Q. Did you make any investigation of it? A. Yes. Q. What did you find? A. I found that the water had turned bad in it, and I noticed little rainbows of oil, I thought it might have come from the pump or from the engine, so after that the stock went to falling off, I noticed that they had started to falling off, I don't remember whether I let it go at that and came back later, but I don't believe I inspected the well that day, I believe it was a couple of days later, if my memory serves me right. I came back and the cattle, they was looking pretty tough, so then there was quite a little oil on top of the tanks, so I taken the curb off and looked in and I would say gas was boiling up as much as six or eight inches out of the water; in other words, it was boiling up plenty and you could smell gas around there and I seen it looked like oil."

Plaintiff testified on cross-examination as follows:

"Q. Therefore, when this well went bad, it went bad because oil came in it, didn't it? A. Well, oil was one of the things, I don't know what else. Q. What else? A. I don't know, there was oil, the only thing I could say. Q. Do you know whether there was anything else? A. I couldn't tell you that particularly, oil is the only thing that I recognized. Q. That is all you know, that there was oil? A. That is all I know."

The manner of plugging abandoned wells is regulated by statute. See section 3671, O. S. 1931, 17 Okla. St. Ann. § 53, superseding section 11581, O. S. 1931, 52 Okla. St. Ann. § 297. The wells from which plaintiff alleges the polluted substances escaped are referred to as wells C5A and C3W. These wells are located 2,150 feet and 2,630 feet, respectively, in a northeasterly direction from the south water well. Plaintiff's testimony with regard to the condition of these wells is as follows:

"A. Well, I wanted to see whether the gas was escaping from the wells, wheth-

er they was properly plugged or not, and so I taken a match and raked back a little dirt with my hand and struck a match and she started burning, it was supposed to be properly plugged. Q. How long did that well burn, if you know? A. Well; it burned all night, I can say that, and up into the next day. Q. What about the other well to the east of that with the check mark by it? A. Well, they had stuck a piece of pipe in that well which they are supposed to do when they plug it, and I opened the gate on that, and also set it afire but the well was plugged with just a two inch pipe, they usually stick one joint in the hole to represent where the well was."

Plaintiff's evidence is also to the effect that the general drainage of the surface was to the east and that the fresh water strata, which is approximately 38 feet below the surface, followed in a general way the contour of the surface.

It is noted that no witness testified either directly or by opinion that the gas and oil found in plaintiff's water well escaped from any of the operations of defendants. Plaintiff's theory is that the circumstances shown are sufficient to sustain a finding of the jury on this point.

Defendants call attention to certain evidence and conclusions deducible therefrom which, it is contended, show that there was no possibility of the escape of pollutive substances from their abandoned wells. These facts and deductions therefrom are as follows: When the wells were abandoned and plugged, the surface casing was left in the wells to a depth of more than 85 feet which would prohibit the contamination of the fresh water strata; that the gas escaping from said abandoned wells was dry gas and did not contain oil, gasoline, or salt water; that the fluid level in the abandoned wells was 2,000 feet below the surface; that there is no evidence that gas was escaping from the abandoned wells at the time of the alleged pollution of the water wells, which occurred more than two years prior to the time plaintiff discovered the escaping gas; that four pipe lines, not owned by either of the defendants, crossed the premises at points not far distant from plaintiff's

water wells; that the evidence shows that there was a break in one of said pipe lines resulting in escaping of considerable oil therefrom in the vicinity of plaintiff's water wells; that there was a water well known as the game water well located 430 feet and 930 feet, respectively, to the northeast of the two abandoned wells, and that the water in this well was not polluted.

Insofar as the cause of the damage to the "south well" is concerned, plaintiff relies wholly upon the violation of the statute relating to the plugging of abandoned oil wells. In order to sustain a recovery, however, it was incumbent upon plaintiff to establish a causal connection between the violation complained of and the injury received. See Pine v. Rizzo, 186 Okla. 35, 96 P. 2d 17. Such connection cannot be established by basing inference upon inference, or presumption upon presumption. Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303; Turman Oil Co. v. Carmen, 179 Okla. 388, 65 P. 2d 963. A showing that gas was escaping from the surface at the point where the abandoned wells were plugged does not justify the presumption that gas, oil, or other pollutive substances escaped from said wells into the fresh water strata underneath the surface and followed such strata a distance of approximately one-half mile to plaintiff's water wells, resulting in the damage complained of.

In the case of Cities Service Gas Co. v. Eggers, 186 Okla. 466, 98 P. 2d 1114, we sustained a recovery of damages for pollution of fresh water strata. In that case a well located approximately 110 feet from a creek which was polluted by salt water likewise became polluted by salt water. It was shown that the water level in the well and the water level in the creek were practically the same, and an engineer testifying as an expert gave as his opinion that there was contact between the water in the creek and the water in the well and that the fresh water stratum into which the water well was drilled was permanently destroyed and polluted by the water in the creek. The court

held that such evidence was admissible and was sufficient to sustain the verdict where the evidence was conflicting. In the instant case there is no contention that the fresh water stratum was polluted by or through the waters of Pasture creek or by surface pollution. The sole contention is that the south well was polluted by the escape of pollutive substances from abandoned oil wells approximately one-half mile away. No witness, expert or nonexpert, gave an opinion that the damage to the well was traceable to the abandoned oil wells hereinbefore referred to. There were no evidence and no facts presented from which it might be inferred or presumed that there was an escape of pollutive substances from the abandoned wells of defendants into the fresh water strata of plaintiff's water well at any place on the lease or in the vicinity thereof. In the absence of such showing we have no alternative but to hold that there is no evidence that the pollution of plaintiff's well is traceable to any operation of defendant company.

Defendants contend that there is no evidence whatever tending to show pollution of the "north well." In this connection plaintiff testified that his hogs and chickens drank the water from that well and a number of them were killed and others were injured. There was other evidence to the effect that the water from the well had a "queer" taste. It also appeared that a bottle of the water was introduced in evidence and examined by the jury, but no evidence was introduced by the plaintiff showing an analysis of the water; therefore, neither the jury nor this court was informed as to the nature of the claimed pollution of the water. An examination of all the evidence on this point, together with all the conclusions reasonably deducible therefrom, fails to disclose any evidence to the effect that the north well was in fact polluted. What we have said in discussing the question of causal connection in relation to the south well is likewise applicable here. In this connection the plaintiff points out the proximity of a pond in the vicinity of the north well, but it does not appear that the pond contained polluted water or that any pollutive substances escaped therefrom into the fresh water strata which supplied plaintiff's well.

As heretofore pointed out, the claimed damage to plaintiff's water wells was considered by the witnesses in estimating the permanent damage to plaintiff's land. There is no way in which we may separate the damages awarded for surface pollution and subsurface pollution. Accordingly, the cause must be reversed and remanded for a new trial.

Other propositions of error are presented and argued, but having taken this view of the matter, it becomes unnecessary to consider them.

The judgment of the trial court is reversed and the cause is remanded, with directions to grant a new trial.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, HURST, DAVISON, and DANNER, JJ., concur. CORN and GIBSON, JJ., absent.