WOOD OIL CO. v. WASHINGTON.

No. 32332. Jan. 21, 1947.

Rehearing Denied June 24, 1947.

Second Petition for Rehearing Denied Sept. 9, 1947.

184 P. 2d 116.

N. E. McNeill, of Tulsa, for plaintiff in error.

Bishop & Bishop, of Seminole, for defendant in error.

OSBORN, J. This is an action for damages brought by plaintiff, Minnie Washington, against defendant, Wood Oil Company. Defendant demurred to plaintiff's evidence, and moved for a directed verdict at the close of all the evidence. Both the demurrer and motion were overruled, and the cause submitted to the jury, which returned a verdict for plaintiff on her first and second causes of action, and denied her any recovery on her third cause of action. Defendant alone appeals.

Plaintiff's first cause of action, as amended during the trial by leave of court, was for damages to her house

caused by the shooting of a near-by oil well by defendant. The second cause of action was for damages to her garden caused by oil spraying from defendant's well. As to the second cause of action, plaintiff and defendant agree that the evidence is sufficient to sustain a judgment for $75, and plaintiff agrees to remit all damages in excess of that amount awarded on said cause of action. This leaves for consideration only the damages awarded on the first cause of action.

Defendant's sole contention is that the evidence is not sufficient to support the judgment for plaintiff on her first cause of action. It urges that there is no evidence that the injury to plaintiff's house was caused by any act on its part, or that its well was shot on or near the time the injury occurred. This necessitates a brief review of the evidence.

The evidence on behalf of plaintiff shows that she owned and occupied a small frame house on a 25-foot lot in Seminole, and that defendant was engaged in drilling a well for oil and gas upon property across the street, the well being some 150 feet from her house. She testified that one night in May, 1943, while she was sleeping in a small room adjoining the main portion of the house, she heard a rumbling or roaring noise, and that the floor of the room in which she was sleeping collapsed or caved in, and that when she was taken out of the room by a man who rescued her she found oil splashed over the house, on the porch, and over the front rooms; that the door and windows were open and the oil had come in through them.

Plaintiff's witness, Ward, the man who pulled her from the wrecked room, where she was pinned down by the bed, testified that he lived about half a block from plaintiff; that at around 11 or 12 o'clock, on the night the room collapsed, he was eating in his kitchen; that he heard a big noise, or rumble, and a lot of "hollering", and felt a jar; that he guessed it was a shot; that he went down to the well and talked to the men working there about selling some royalty, that he only stayed a minute, because the men told him to go away, that it was dangerous; that he went across the street and sat down on the porch of plaintiff's house; that he heard her groaning and pulled her out of the collapsed room; that when he went to the well it was spewing oil, and that when he went to plaintiff's house oil was spraying on the top of the house, and then it began to fall on the porch. He testified that the next morning a big Halliburton Cement truck was at the well.

Another witness, Pearl Wright, testified that at 11 or 12 o'clock one night, having been informed that the well had been shot, she went up to the well and was told to go away; that there were a lot of men there and oil was shooting out of the well; that she did not hear any rumble or blast; that two or three days afterward she hear about the injury to plaintiff's house.

Another witness testified that she went to plaintiff's house the next morning after the well came in, and that the floor of the room where plaintiff slept was caved in, and that oil was splashed or splattered over the front of the house and on the inside. Other witnesses testified that several of the sills supporting the floor of the room were broken, and the witness Keller, who examined the house shortly after the floor collapsed, testified that the sills were not rotten, and that the house did not fall off of the foundation, which consisted of rock pillars. He testified that the floor of this room had been broken or pulled away from the rest of the house.

Defendant's evidence was that there was no perceptible noise or jarring of the ground when the well was shot, and that it did not spew or spray oil. It further showed that the shot was exploded on May 26th at 8:49 a.m.; that a little oil was sprayed on the houses north of the well for a short period of time when cable tools were used on the well, due to the fact that oil would get on the cable and blow off when the cable passed

over the crown block. Its witnesses testify that the Halliburton truck which the witness Ward testified he saw at the well the morning after the explosion was there on April 26th to take a drill stem test, and that at that time there was no explosion, and no oil spewed or sprayed from the well; that Ward was there at that time and talked about selling some royalty.

While the evidence on behalf of plaintiff was circumstantial, it was sufficient to require the submission of the case to the jury and to sustain the verdict and judgment on the first cause of action.

In Cities Service Gas Co. v. Eggers, 186 Okla. 466, 98 P. 2d 1114, 126 A.L.R. 1278, we held that we would review a verdict founded on conflicting evidence only for the purpose of determining whether it was supported by competent evidence, and that essential facts might be proved by circumstantial evidence, in which event it was not necessary that the proof rise to a degree of certainty which would exclude every other reasonable conclusion than the one reached by the jury.

From the evidence offered on behalf of plaintiff it is reasonable to infer that the wrecking of her house was caused by some sort of an explosion in the vicinity, and the testimony of her witnesses Ward and Pearl Wright that shortly thereafter oil was spewing or spraying out of the well and was cast upon the premises of plaintiff, was sufficient to justify an inference that there had been some sort of an explosion in or about the well of defendant which occasioned the injury to plaintiff's house. While the evidence was to some extent weak and unsatisfactory, we think it was sufficient to require the submission of the cause to the jury, and from the verdict it is clear that the jury believed the witnesses produced by plaintiff, and drew from their testimony the reasonable inference that plaintiff's injury was caused by an explosion in the well of defendant. We think the evidence was sufficient to sustain the verdict and judgment for the plaintiff on her first cause of action.

The jury returned a verdict for plaintiff of $300 upon the first cause of action, and for $250 on the second cause of action, but, as above stated, the parties agreed that the evidence is sufficient to support a verdict and judgment of only $75 on the second cause of action. The judgment is, therefore, modified by reducing it to the sum of $375 and costs, and as modified is affirmed.

HURST, C.J., DAVISON, V.C.J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.