SHELL OIL CO. et al. v. BLUBAUGH.

No. 31120.    Oct. 7, 1947.

Rehearing Denied Nov. 3, 1947.

*185 P. 2d 959.*

W. M. Bowles, of Perry, Geo. W. Cunningham and Paxton Howard, both of Tulsa, Ralph J. Hay, of Oklahoma City, and W. D. Masterson, Jr., of Tulsa, for plaintiffs in error.

Bruce Potter, of Blackwell, Elmer S. Rutherford, of Tonkawa, and Cress & Rosser, of Perry, for defendant in error.

PER CURIAM. Joe Blubaugh, hereinafter called plaintiff, filed his action against the Shell Oil Company, Inc., a corporation, and Continental Oil Company, a corporation, seeking damages for pollution of certain lands. This is the second appeal to this court. See Shell Petroleum Corporation v. Blubaugh, 187 Okla. 198, 102 P. 2d 163.

As stated therein the plaintiff is the owner of the W.½ of section 1, township 24 north, range 1 west, in Noble county, and the defendants are operators of the E.½ of section 2, same township and range and the lands are ad-

jacent. Approximately 85 wells were drilled in section 2. A small creek known as Pasture creek traverses the two half sections and this creek was polluted by the escape of salt and water and oil. The damages for permanent injury to plaintiff's lands involved two elements. The first was damage by reason of the overflow and seepage from Pasture creek. The second was subterranean damages or damage to the fresh water strata underlying plaintiff's land.

We quote from Shell Petroleum Corporation v. Blubaugh, supra:

"At a point 700 feet south of said polluted area there is located a water well which is referred to as the 'south well'; 350 feet north of the polluted area there is located a water well referred to as the 'north well'. It is claimed by plaintiff that both of these wells were polluted by the operations of defendant companies. The alleged pollution thereof constitutes an integral portion of the permanent injury to the plaintiff's land which was considered by the witnesses in estimating the amount of plaintiff's damages thereto."

This court held that there was no competent evidence of damage from two certain oil wells either to the north well or the south well and therein stated:

"There is no way in which we may separate the damages awarded for surface pollution and subsurface pollution. Accordingly, the cause must be reversed and remanded for a new trial."

At the second trial for the purpose of supplying this deficiency the plaintiff amended his petition on which the first action was based and selected 14 abandoned and plugged wells from which it is alleged that by reason of improper plugging of the said wells oil and salt water escaped into the water source of the plaintiff's land. Plaintiff testified that these 14 wells were substantially in the same condition in 1940 as when he filed his first action. Having laid this predicate he called C. A. Stoldt as a witness. This witness was a graduate civil engineer and testified that he examined these wells in 1940 and that it was his opinion that salt water and oil escaped therefrom and polluted the water sands of the plaintiff's land; that as a result thereof both the north well and the south well were polluted. The case was tried to a jury which returned a verdict for $6,689, upon which judgment was rendered. Upon special interrogatory submitted the jury divided the judgment as follows: $5,400 for permanent injury to the land; $225 for the loss of cattle; $4 for the loss of hogs; $280 for the loss of chickens; $660 for injury to cattle in addition to those killed, and $120 for digging a well and building a fence on rented property on which to pasture his cattle.

The defendants present the following propositions: (1) There is no proof of pollution of the north well; (2) there is no proof of pollution of the south well; (3) there is no proof of damages to livestock or poultry from the drinking of water from the wells; (4) there is no proof of pollution of the surface in addition to the former pollution by other oil companies from which no recovery can be allowed.

We are of the opinion and hold that there is no proof of pollution of the north well. In that respect the evidence is similar to that at the former trial. It has no salt content harmful to either poultry or livestock and contains no oil.

As to the south well the evidence on this trial differs from the evidence as reported in the opinion of the court in Shell Pet. Corp. v. Blubaugh, supra. In addition to stating that in his opinion certain salt water and oil was escaping from improperly plugged wells, Stoldt testified that in his opinion pure oil was drawn into the sands of the south well by the pumping of said well, and that this pure oil reached into and became lodged in the south well.

The evidence shows beyond question that the south well contains less than one-sixth of one per cent salt solution.

It is admitted that this amount of salt is neither harmful to poultry nor livestock. It was established that in September, 1934, plaintiff found pure oil to a depth of several inches in the south well. He testified that after he informed the defendants of this condition they sent their employees who pumped the well for ten or twelve days. The defendants' witnesses testified that they pumped the well for a few hours and pumped out pure oil; that thereafter they pumped the well a number of times and found no oil. There is no testimony in the record that after September, 1934, any water was used out of the well which contained salt water in a harmful solution or any oil. The closest oil well is approximately 2,100 feet from the south well. The defendants caused a number of test holes to be drilled through the water sands in the proximity of this water well and an analysis showed no pollution either by salt water or oil. There is no proof in the record that after the well was pumped in 1934 there was oil or salt water therein or coming therefrom in sufficient quantities to be harmful to stock or poultry. All of the witnesses who qualified for plaintiff as to the value of the land before and after the assumed pollution were asked to assume that the surface pollution had been established and that the water sources of the plaintiff's land had been destroyed. The law of the case in Shell Pet. Corp. v. Blubaugh, supra, therefore, wherein it is stated that there is no way in which to separate the damages awarded for surface pollution and subsurface pollution, applies here. The evidence shows that whatever the source of oil in the south well in 1934, it was pumped from the well, and thereafter it produced neither salt water nor oil and the condition was therefore temporary and could not be used as a basis of permanent damage to the realty. St. Louis-S.F. Ry. Co. v. Ramsey, 37 Okla. 448, 132 P. 478; Ponca Refining Co. v. Smith, 73 Okla. 6, 174 P. 268.

Before a judgment can be sustained it must be shown that the alleged act of the defendant is the proximate cause of the injury to the plaintiff. In Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303, it is stated that while the proximate cause may be proved by circumstantial evidence a recovery cannot be had by adding inference to inference or presumption to presumption and that the want of evidence cannot be thus applied by deduction.

Where the evidence is such that a verdict for the plaintiff in any amount must necessarily be based on speculation and conjecture, a verdict should be directed for the defendant. Ingram v. Dunning, 60 Okla. 233, 159 P. 927; Wichita Falls & N.W. R. Co. v. Cover, 65 Okla. 110, 164 P. 660; Northup v. Eakes, 72 Okla. 66, 178 P. 266; 28 C.J. p. 603; Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 P. 438; Toombs v. Cummings, 151 Okla. 166, 3 P. 2d 177.

There are several other issues presented in connection with the four chief propositions, but it will be unnecessary to determine those issues in this case. Likewise, it is unnecessary to determine whether there is any evidence in the record tending to justify the amounts for damages to the livestock and the poultry.

The cause is reversed and remanded, with directions to grant a new trial.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.