McNUTT v. SIMONS et al.

No. 34119.    May 22, 1951.

Rehearing Denied June 12, 1951.

*232 P. 2d 404.*

DuVal Pitchford, Okmulgee, for plaintiff in error.

C. D. Lewis, Okmulgee, for defendants in error.

CORN, J. Plaintiffs sued to recover damages for injury to a cow allegedly caused by the animal drinking oil which had escaped from defendants' oil and gas well. Preceding a nonjury trial the action was dismissed as to J. P. McNutt, Sr., and the case was tried and judgment rendered against J. P. McNutt, Jr., who prosecutes this appeal.

The petition alleged plaintiffs' ownership of a registered Hereford cow, which was pastured upon a tract of land leased from one Wallace, and that defendant had knowledge plaintiffs had leased and were pasturing the land; in December, 1946, defendant negligently permitted oil to escape from a well upon the land and into a stream from which plaintiffs' cattle drank; that defendant knew oil was escaping from the well and flowing into the stream where the cattle drank, but negligently failed to protest against this or to warn plaintiffs of the danger. Plaintiffs sought judgment for $550 for loss of value of the injured animal, and other damages, in a total amount of $760. Defendant's demurrer was sustained as to plaintiffs' second cause of action for damages based upon other matters not material to this appeal.

Answer was by general denial, and the further plea of contributory negligence in that plaintiffs rented the pasture knowing of the presence of the well upon the land, and deliberately permitted the animal to have access to the products of the well; that livestock had been pastured there for many years and plaintiffs knew of the location of the well when they rented the property, and had ample opportunity to protect their stock, but made no effort to do so. Plaintiffs replied by general denial of the matters alleged in defendant's answer.

The evidence disclosed that this land, of approximately 20 acres, had been used to pasture livestock since about

1931. Near the center of the property was an old nonproducing oil well from which the pipe and tubing had not been removed. Three ravines traversed the west portion of the pasture in a north to south direction, the most westerly of which contained a continuous, running stream. The well in question, located to the east of the ravines and on a slightly higher level, had not been produced since about 1938. Defendant had acquired the property in 1946, but had never produced oil from the well. To the northeast of this well, and in a position to drain into the stream where the cattle drank, was a well belonging to another operator, adjoined by earthen tanks used in handling deleterious refuse from this property.

A witness for plaintiff (Wallace) occupied an adjoining tract overlooking the pasture and well. He testified that in December, 1946, oil ran out of the well casing and onto the ground; upon observing this he advised McNutt, Sr., of this condition. There had been rather heavy rains about that time, and as the water flowed down the slope the oil also flowed down into the stream where the cattle watered.

The veterinarian (Dr. Pilgrim) who was called to care for the sick animal, established by his testimony that the cause of injury to the cow was the drinking of fresh oil. Upon discovering her condition, he, in company with one Mariner who had discovered the sick cow, investigated and found oil on the water along the stream where the cattle drank.

Mariner, a brother of Mrs. Simons, cared for the cattle in the pasture. He testified the land had been used for pasture since about 1931, and that there had been no trouble with escaping oil theretofore. After discovering the presence of oil in the watering stream they fenced the cattle off from the stream the same day.

Mrs. Simons testified that she observed the well the day it was discovered the cow was sick; there was considerable fresh oil around the well and a hole approximately six feet in diameter and about 15 feet from the well had overflowed from the rains and then flowed into the stream. There was other testimony establishing the value of the injured cow and the extent of the damage resulting from the illness.

The defendant testified that he bought the well in 1946, but had never produced the well; that ravines led down through the pasture from another operator's tanks and slush ponds on an adjacent tract, and that there was evidence of overflow from these tanks into the ponds and then through siphons into the pasture ravine. He testified no live oil had escaped from his well or between the pipes; that if any live oil was present it could have come from the adjacent tract. The testimony to the effect that there was evidence of oil having escaped from the adjacent tank operations into the pasture ravines was controverted by plaintiffs.

Defendant offered further testimony tending to establish that during November and December, 1946, this area was subjected to excessive rains of approximately 8,000 barrels per acre over the 15-acre watershed of the three ravines draining through the pasture. Further, that any live oil which would have been poisonous to cattle either would have lost its toxic condition or have been carried away entirely by the action of the elements.

After hearing all the evidence, the trial court entered judgment for plaintiffs for $450, the value of the animal when purchased by plaintiffs.

In appealing from the judgment rendered, the assignments of error relied upon for reversal are presented under one proposition, based solely upon the alleged insufficiency of the evidence to show that the cow became ill and was injured as a result of drinking oil which flowed from defendant's well and into

the stream where cattle drank. The basis of defendant's argument is that the evidence failed to establish whether the cow drank oil at the well or from one of the ravines in the pasture, since no witness saw the cow drinking. Defendant says the evidence did show the availability of live, or fresh oil at the well location, but failed to establish that oil was carried to the running stream, remained thereon and was drunk there. And defendant further urges the improbability of oil collecting in the running stream in view of the heavy rainfall. Thus, it is contended that since there was no way of knowing where the cow drank the oil, the trial court's judgment imposing liability upon defendant was the result of conjecture and speculation and cannot be permitted to stand. See Prest-o-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303; Shell Oil Co. v. Blubough, 199 Okla. 353, 185 P. 2d 959.

The evidence upon which the trial court's judgment was based has been pointed out heretofore. This court adheres to the rule that the existence of negligence may be established by circumstantial evidence. And such circumstantial evidence need not exclude every other reasonable hypothesis. Casualty Reciprocal Exch. v. Sutfin, 196 Okla. 567, 166 P. 2d 434; Okmulgee Supply Corp. v. Hall, 195 Okla. 481, 158 P. 2d 1014; Wood Oil Co. v. Washington, 199 Okla. 115, 184 P. 2d 116.

The testimony in the present case was sufficient for the trial court to find that oil escaped from defendant's oil well; that it flowed, or was carried down the hill and into the ravine by rainfall; that the oil collected on top of the water where cattle drank, and that plaintiffs' cow drank from the stream and was injured as a result of this. In such cases the following rule, announced in paragraph 2 of the syllabus in Cities Service Gas Co. v. Eggers; 186 Okla. 466, 98 P. 2d 1114, 126 A.L.R. 1278, is controlling.

"Evidence reasonably tending to prove the essential facts in a case, either directly or indirectly, or by permissible inferences, is sufficient to sustain a verdict and judgment based thereon."

Judgment affirmed.

ARNOLD, C.J., LUTTRELL, V.C.J., and GIBSON, DAVISON, HALLEY, and O'NEAL, JJ., concur.