## OGDEN v. BAKER.

### No. 34591. Dec. 26, 1951.

*239 P. 2d 393.*

Arthur G. Croninger and A. L. Commons, Miami, for plaintiff in error.

Frank Nesbitt, Nelle Nesbitt, and Robert E. Nesbitt, Miami, for defendant in error.

BINGAMAN, J. This action was brought by Clint Baker, as plaintiff, against the defendant, D. F. Ogden, executor of the last will and testament of Wid Gaines, deceased, to recover hospital and medical expenses incurred by him on behalf of his minor son, Gene Baker, who was injured while riding in a pickup truck belonging to Wid Gaines. At the close of the evidence the trial court overruled defendant's motion for an instructed verdict and submitted the cause to a jury which returned a verdict for plaintiff. Defendant appeals.

Undisputed facts are that on July 18, 1946, Don Kinkead, the grandson of Wid Gaines, accompanied by Gene Baker and his brother, Dean, went from Afton to the home of Wid Gaines in Narcissa and borrowed a 1939 pickup truck belonging to Gaines for the purpose of taking a party of boys and girls to Miami. Kinkead at the time was sixteen years of age, and Gene Baker was approximately the same age. The boys went to Miami in the truck, Kinkead driving, and from there Kinkead with Gene Baker and another boy went to the city of Grove where they picked up five girls who also accompanied them to Miami. Thereafter they returned to Afton, picked up two more boys and the whole group rode in the pickup to Miami, returning later that evening to Afton. During all this time Kinkead drove the truck. At about 11 o'clock that evening the group started to Grove to return the girls to their homes and after they had proceeded a mile or two out of Afton, Kinkead turned the driving of the truck over to another youth named Ray Walker. Thereafter Kinkead rode in the back as did Gene Baker. Walker drove the truck, having with him in the front seat his girl, Dean Baker and another girl. The party had proceeded some eight miles when, in descending a steep hill, Walker lost control of the truck which overturned, seriously injuring Gene Baker.

In plaintiff's amended petition he charges that the pickup truck was defective in that the steering wheel and its attachments and parts were so worn and in such bad condition that there was considerable play in the steering wheel; that the brakes and braking equipment were so badly worn as to be useless and ineffective as a means of slowing down or stopping the truck, and that Gaines was negligent in that well knowing of this condition of the brakes and steering wheel, he permitted the truck to be driven and operated by Kinkead and his guests on the public highways. He charges that the injury to his son was caused by the negligence and carelessness of Gaines as above set forth.

While the defendant makes several contentions in his brief, we think the

decisive question presented is whether the trial court erred in refusing to sustain defendant's motion for directed verdict. Defendant charges that the evidence was wholly insufficient to establish the negligence charged in plaintiff's amended petition, in that it does not show that either the brakes or steering wheel were defective prior to the date of the accident, or that Gaines knew of any such defects in the steering wheel and brakes at the time he loaned the truck to his grandson.

There is in the record no evidence which tends to reflect the condition of the steering wheel or the brakes prior to the accident, except the testimony of Ray Walker, who was driving the truck when the accident occurred. He testified that he came to the top of a long hill which was rather steep and that, knowing that it took pretty good mechanical brakes to hold the truck on such a hill, he shifted into second gear; that the truck started swerving and jumped out of gear, and that he then discovered that the steering wheel had a lot of play in it so that he could not control the truck and that when he tried the brakes they would not work.

That at first he tried to put the truck back in gear, but it was going at such a rate of speed he couldn't and that he thereupon commenced pumping the brakes without result. He further testified that while riding with Kinkead during the evening on the trip from Afton to Miami and back he did not notice that Kinkead had any difficulty either with the brakes or steering wheel, and that he had no trouble with either until he started down the hill on which the accident occurred.

Plaintiff also produced as a witness a highway patrolman who testified that he examined the truck the day after the accident and that the foot brakes were low on pressure and had a defective cylinder. That he examined the lines and found no indication of their being damaged and that by operating the foot brake he could not get up any power until he pumped it several times and it built up pressure. He further testified that the steering mechanism had been damaged in the accident and he was unable to determine whether or not it had been defective prior to the accident.

The plaintiff further read in evidence a portion of the deposition of Don Kinkead taken prior to the trial in which Kinkead testified that his grandfather, Wid Gaines, had driven the truck for several years and that he imagined he drove it almost every day. He then testified as follows:

"Q. He was thoroughly familiar, was he not, with the truck and its condition? A. Yes, sir."

The defendant read all of this deposition in evidence and the testimony of this witness, as a whole, negatives the existence of any deficiency in either the brakes or steering gear prior to the accident. He testified that he did not remember having had any trouble with either at any time previous to the accident. When counsel for plaintiff asked him on cross-examination if he ever told Ray Walker anything about the condition of the truck, he stated that there wasn't anything to tell him. This witness further testified that the road going down the hill on which the accident had occurred had been freshly graveled and that there was loose chat and gravel all over the road except where the cars had worn tracks in the gravel.

Defendant contends that this evidence was wholly insufficient to show that the vehicle was in such bad condition as to be unfit for use, or to show that Wid Gaines must have known then, and prior to the time he loaned the truck to his grandson, of the existence of such dangerous condition, and that the verdict of the jury was necessarily based on speculation and conjecture.

Plaintiff, on the other hand, asserts that while the general rule is that the existence of a present condition or set of facts does not raise any presumption that such condition existed at a prior

date, there is an exception in cases where ordinarily the present condition must have existed at the time as to which the presumption is invoked, citing 22 C. J. p. 92; 20 Am. Jur. p. 284, par. 306, and cases holding that in various circumstances it may be presumed that a present condition had existed in the past. None of these cases seem to involve a situation similar to that involved in the instant case.

Plaintiff further asserts that the statement made by Don Kinkead in answer to the question propounded him as set forth above, to the effect that Wid Gaines was thoroughly familiar with the truck and its condition, was sufficient to permit an inference by the jury that Wid Gaines necessarily knew of the defective condition of the brakes and steering wheel.

We are unable to agree with the contention of plaintiff as set forth above, and think the contention of the defendant must be sustained. As we view the case, in order to return a verdict for plaintiff the jury must necessarily indulge in the presumption that the defective condition of the brakes and steering wheel, as testified to by Walker, existed in the past, and then indulge the further presumption or inference that because he was familiar with the general condition of the truck, Wid Gaines necessarily knew of the defective condition of the brakes and steering wheel.

In Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d. 303, we noted that the plaintiff sought recovery upon the theory that his chickens and livestock died as a result of drinking water polluted by a poisonous substance or substances produced by the defendant's carbide plant. We held that the evidence was insufficient to establish either hypothesis and that the damage could not be established by basing inference upon inference or presumption upon presumption. In that case we said:

"In the light of these authorities the recovery by plaintiff herein cannot stand. While the proximate cause may be proved by circumstantial evidence, a recovery cannot be had by adding inference to inference or presumption to presumption, and the want of evidence cannot be thus supplied by deductions. If it had been proved that at the time the injuries were incurred there were poisonous or deleterious substances in the water, harmful to animal life, or if it had been proved that the animals and fowls died as a result of drinking the water, a different situation would prevail, but the failure to prove one of these circumstances is fatal to plaintiff's right of recovery."

The holding in this case has been followed in Shell Oil Co. v. Blubaugh, 199 Okla. 353, 185 P. 2d 959; Tweed v. First Nat. Bldg. Corp., 203 Okla. 31, 218 P. 2d 356; Shell Oil Co. v. Haunchild, 203 Okla. 456, 223 P. 2d 333; and is now the settled law in this state.

Reversed, with directions to grant the defendant a new trial.

HALLEY, V.C.J., WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.