### JACKSON v. CLARK et al.
### No. 35315.

Supreme Court of Oklahoma.

Dec. 15, 1953.

Brown, Cund & Brown, Duncan, for plaintiff in error.

Ben F. Saye, Duncan, for defendants in error.

DAVISON, Justice.

This is an action for damages to realty, allegedly resulting from oil, waste, refuse and salt water from oil and gas wells being allowed to flow over the surface of the land in violation of 52 O.S.1951 § 296. It was brought by N. E. Clark and Grace Clark, as plaintiffs, against J. E. Jackson, as defendant, the oil and gas lessee of an adjoining tract of land. The parties will be referred to as they appeared in the trial court.

The plaintiffs owned, and occupied as a homestead, a 120 acre tract of land in Stephens County, Oklahoma. The defendant, as lessee, was the operator of a 170 acre oil-producing property, lying north and west of plaintiffs' land. On the leasehold of defendant were some five or six oil wells and one salt water disposal well. The latter was about 300 feet north and east of the northwest corner of plaintiffs' farm. A small drain or ditch, in its course to a nearby creek, ran generally from the northwest, past the salt water disposal well and in a general southeasterly direction across plaintiffs' lands. In the bottom land, along this drain, were pecan trees. Just east of the drain and near the north boundary line of plaintiffs' land was a water well. Some 250 yards south of it and on the other side of the drain was another water well.

This action was filed on December 11, 1950. By their petition, as amended, plaintiffs alleged that, during the immediately preceding two years, the defendant had allowed salt water, base sediment and other deleterious substances to escape from earthen tanks and from the salt water disposal well and to flow over plaintiffs' lands and into the drain or ravine and thence, across plaintiffs' property into a bar ditch along the south boundary thereof. Plaintiffs also alleged that the two water wells were thereby ruined and some 16 pecan trees, along the ravine, were killed; that the only fresh water strata, underlying plaintiffs' land, capable of producing water suitable for domestic and stock use had been ruined because of impregnation with salt from defendant's oil operation; that a strip of land fifty feet wide on each side of the ravine and about ten acres and an additional 50 pecan trees along the south boundary had been ruined or destroyed. Plaintiffs further alleged that defendant was guilty of gross negligence whereby they were entitled to recover actual damage and also exemplary damages.

A trial of the case to a jury resulted in a verdict and judgment for plaintiffs for $1000 actual damages and $500 exemplary damages. Defendant has perfected this appeal therefrom. The most important proposition presented by the defendant and the one decisive of the issues is as to the sufficiency of the evidence to sustain the verdict and judgment.

■ The only evidence as to the monetary value of injury suffered by plaintiffs was the difference in market value of their land in December, 1948, and the market value in December, 1950. This difference was fixed by the witnesses at approximately $3500 to $4000. The jury, by its verdict, fixed the recovery for actual damages at $1000. Thus the evidence and the verdict and judgment included in one amount, all damage done to the trees, the water wells and the land itself. Therefore, in order for the judgment to stand, it is necessary that the record disclose competent evidence supporting the same as to all items of damage in all essential elements. They are: Duty due plaintiffs by defendant; breach of the duty; injury to plaintiffs directly and proximately resulting from such breach. If any one of these elements is lacking, there can be no recovery. In the instant case, the statute fixed the duty and its extent. The testimony is uncontradicted as to the depreciation in value of plaintiffs' lands. However, the record discloses no competent evidence establishing a causal connection between plaintiffs' injury and any acts of the defendant, however wrongful.

Following the earlier case of Pine v. Rizzo, 186 Okl. 35, 96 P.2d 17, it was said in the case of Shell Petroleum Corp. v. Blubaugh, 187 Okl. 198, 102 P.2d 163, 166, that, "In order to sustain a recovery, however, it was incumbent upon plaintiff to establish a causal connection between the violation complained of and the injury received. * * * Such connection cannot be established by basing inference upon inference, or presumption upon presumption."

Following the earlier case of Shell Petroleum Corp. v. Worley, 185 Okl. 265, 91 P.2d 679, it was said, in the case of Magnolia Petroleum Co. v. Davis, 193 Okl. 699, 146 P.2d 597, 598, that, "The mere fact that water tasted salty will not support an inference of evidential verity that dead fish found in such water, and dead trees nearby were destroyed as a result of the salt con-

tent of the water. Nor will the courts take judicial notice that such result will follow."

The first of the above quoted cases deals with damages by reason of loss of pecan trees. The latter deals with damages by reason of the loss of pecan trees. As above pointed out, the evidence and verdict in the case at bar fixed the damage to plaintiffs in a lump sum which included the damage to the wells and to the pecan trees. Therefore, a failure of the evidence to establish a causal connection between these losses and defendant's acts would defeat the entire judgment.

■ In the instant case, there are two points of particular importance in an analysis and evaluation of the evidence. The first is that defendant purchased the producing oil properties in November, 1948, about two years before the filing of this action. Prior to that time and while owned by another, the property had produced large quantities of salt water. The disposal well was drilled in 1945 to remedy that situation. In 1947 the former owners of the lease settled with plaintiffs, for damages done to their land by salt water, by paying $500 and by drilling them another water well. The second point is that injuries to trees and contamination of subterranean strata and to underground water supplies are matters about which only experts can testify with any degree of certainty. These two points give rise to two corresponding questions which must be answered in the affirmative in order to entitle plaintiffs to recover. They are: Did the pecan trees die and were the wells ruined by salt water which came from defendant's oil producing property? And if so, was the damage a result of salt water which escaped during the time the oil property belonged to defendant?

Neither party produced a witness who qualified as an expert on these matters. At the conclusion of the testimony, the jury viewed the premises and one juror brought back to the courtroom, a bottle of water which he had taken from one of the water wells. An examination of the water was made by a chemist who then appeared as a witness. But the extent of his testimony was as to how many parts of salt per one million parts of water the sample contained. He did not testify as to what effect it would have. There was no testimony as to how or from where the salt got into the fresh water bearing strata. The only testimony, definitely on the question of any water escaping form defendant's leasehold was that of a State Game Ranger. He testified that, in 1949, he inspected the salt water disposal well and found water coming out around the outside of the casing. What percentage of salt it contained does not appear. The little drain or ravine by means of which it is asserted the salt water got to plaintiffs' lands was also the drainage way from other oil producing leases and one of the lessees thereof was originally a party defendant herein. The case against that defendant was severed and filed separately.

As to evidence of causal connection, plaintiffs cite the case of Magnolia Petroleum Co. v. McGeeley, 203 Okl. 470, 223 P.2d 131. In the cited case, however, the defendants admitted that the creek was polluted and several of their witnesses testified that such pollution was the cause of the decrease in value of plaintiff's land. Also, one of plaintiff's witnesses, an experienced appraiser of land alleged to have suffered injury from salt water, qualified as an expert on such matters and testified as such. That was materially stronger proof than is presented here.

The record further contains evidence of unseemly conduct on the part of defendant and his employees toward plaintiffs after complaint was made by them. The verdict includes an amount for exemplary damages and would indicate that the evidence of such conduct had an effect on the jury to the extent that a verdict for plaintiffs for actual damages could have been returned on substantially weaker testimony than would otherwise be the case.

A causal connection between the defendant's violation of the statute and injury to plaintiffs not having been established by competent evidence, the trial court should have directed a verdict for defendant.

Having reached this conclusion, it is unnecessary to determine the other propositions presented.

The judgment is reversed and the cause remanded with directions to grant a new trial.

HALLEY, C. J., and WELCH, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.

JOHNSON, V. C. J., and CORN, J., dissent.