**SUNRAY OIL CORP. v. BURGE et al.**

No. 35702.

Supreme Court of Oklahoma.

April 6, 1954.

Rehearing Denied April 27, 1954.

stream thereafter emptied into Beaver Creek, and which latter stream ran through land occupied by plaintiffs' located in Jefferson County, Oklahoma; that plaintiffs' land was primarily used for the raising of livestock and that by reason of the pollution of said streams the water could not be used by livestock for the years 1948 to 1950, inclusive.

That immediately before the pollution of Beaver Creek, the usable value of plaintiffs' land was $3,000 yearly, and that immediately after the pollution it was worth $1,000 per year.

That plaintiffs owned five white-faced cows that aborted their calves in October and November, 1948; that each cow prior to the abortion was worth $250, and was worth $150 each afterwards; that the damage to said cattle resulted from drinking the polluted water from Beaver Creek.

Upon submission of the case the jury returned a verdict in favor of plaintiffs, upon which judgment was rendered.

Defendant seeks a reversal of the case upon the ground that the court erred in refusing to sustain defendant's demurrer to plaintiffs' evidence, and in failing to direct a verdict in favor of the defendant and against the plaintiffs.

We shall first advert to the testimony in support of plaintiffs' petition:

Witness Clymer testified that in October, 1948, he was fishing in Cow Creek at a point approximately one mile north of Waurika, Oklahoma, at which time he observed that the water in the creek was clear, but that it had a bad taste which puckered up his mouth like green persimmons.

Witness Crawford, a State Game Pollution officer, testified that he had investigated the condition of Cow Creek with reference to its pollution from approximately 1945 to a period of approximately two years prior to the trial date in April, 1952; that he observed colored water flowing in Cow Creek, which appeared to contain some oil; that he made several investigations of Cow Creek, but did not recall the time, month or year of such investigations. Being subsequently recalled

Edward Howell, Oklahoma City, J. D. DeBois, Duncan, for plaintiff in error.

H. B. Lockett, Hegel Branch, Duncan, for defendants in error.

O'NEAL, Justice.

In their petition plaintiffs charged that in the manufacture of petroleum products the defendant used chemicals and other substances unknown to the plaintiffs, that were poisonous and harmful to livestock, which defendant, during the past two years, permitted to escape from its refinery and flow into Cow Creek, which

as a witness he stated that on December 27, 1948, he observed a fluid coming from defendant's refineries which had a milky appearance. He also observed that the cities of Duncan and Comanche emptied their sewage in Cow Creek during the years 1948 to 1949. On cross-examination he testified that a number of producing oil wells within the watershed of Cow and Beaver Creeks produced salt water in substantial quantities, which drained into said streams.

Witness Sparks, a State Game Ranger, testified that he examined the waters of Cow Creek and Beaver Creek during 1948, and also in the fall of 1949; that the water in Cow Creek seemed bad but he could not state the chemical components of the water, but was of the opinion that oil was poisonous to fish and wild life; that in the months of May and December, 1948, and again in January and March, 1949, he was on the refinery grounds at which time he observed that refinery waste water drained into Cow Creek. In the year 1948 and 1949, he observed that sewage from the city of Duncan, located north of the defendant's refinery drained into Cow Creek. He further testified that salt water and oil waste produced from oil wells within the drainage area of Cow Creek polluted the waters of the stream. In his examination of the refinery in February and March of 1949, he observed evidence of a broken pit and that due to a heavy rain some water was flowing from the pit and draining into Cow Creek; that he took several samples of the water for a chemical analysis, but that he did not know whether the analysis was made or the result thereof.

The witness Ewing testified that Beaver Creek ran through his farm and that during the fall of 1948 he observed some dead fish in the stream; that a few days thereafter he noticed that the water had a bad smell.

Witness Shaw, who lived near Waurika on Cow Creek, testified that in October, 1948, the water in the creek had the appearance of buttermilk, and had a bad odor; that he lost seven shoats three months after October, 1948, but that he did not know what caused their death; he stated that he did not observe any pollution in Cow Creek after 1948.

The witness, Pickett, testified that in November, 1948, he was working on a bridge three miles south of Comanche, Oklahoma, and at that time raw sewage from the town of Comanche was being emptied into the stream and that the odor of the water was very bad.

The plaintiff, Earl Burge, testified that he lived on land adjacent to the town of Waurika, Oklahoma. He described the condition of the water in Beaver Creek as having the appearance of buttermilk; he stated that in May, 1949, he followed the stream north up to defendant's refinery and found both Beaver and Cow Creek contained polluted water. He described the condition at the refinery in all substantial respects as testified to by the witnesses, Crawford and Sparks; that he was engaged in raising stock and that in November or December, 1948, five of his cows aborted their calves and that each cow was worth approximately $250 prior to aborting and was depreciated in value approximately $150 each; that his cows had been tested in 1949 for Bangs disease, but he was not sure about such a test in 1948; that Bangs disease, as well as other diseases, caused cows to abort. He further testified that the Beaver Creek running through his land did not overflow, and that by the use of the term "pollution" as applied to his land, he meant that the water in the creek was unsuitable for livestock. In determining the damage to his land by reason of the pollution of the stream he testified that in fixing such value he based his opinion on what he could make out of the land, or what he could get out of it; that the water in Beaver Creek apparently cleared up and was usable for stock purposes commencing in January, 1950.

Additional evidence of witnesses was accumulative of the foregoing evidence.

Defendant's demurrer to plaintiffs' evidence was overruled, whereupon, defendant produced evidence tending to establish

the following facts: The witness, Hurst, a resident of Comanche for the past twenty years, stated that Cow Creek ran through his farm located approximately three miles from defendant's refinery; that his tenant ran about 40 head of cattle on the land during the year 1949, without any injury from the use of the waters from Cow Creek.

The witness, Douthitt, the owner of the farm north of the defendant's refinery, testified that the sewage of Duncan ran into Cow Creek and that in the year 1948, he lost some cattle by watering them in Cow Creek; that the water above the refinery had a very bad odor and was of a milky color.

The Chief Chemist for the defendant identified samples of water taken from Cow Creek near the refinery during the years 1948, 1949 and 1950. He testified that the effluent water used in the refinery operation was impounded in pits to recapture any oil as it surfaced and also to permit the sulfides and sulfates on exposure to oxidize and go into the form of free sulphur, which in the latter form is not harmful to livestock after mingling in the water of the streams; that during the years 1948 to 1950, frequent analysis of the water was made and that it did not contain any injurious ingredient due to defendant's refinery operation; that the milky appearance of the water was occasioned by the oxidation of sulfides to form free sulphur; that in the operation of the refinery no sodium chloride was added to its effluent water.

Dr. Heller, Professor of Biological Chemistry with Oklahoma A & M College at Stillwater, Oklahoma, testified that the samples of water taken by the Chemist, E. W. Patterson, during the years 1948 to 1950, did disclose a content of sodium chloride (common salt) but did not disclose other chemical properties harmful to plants or toxic to animals; that the report of the analysis of Cow Creek water at Comanche, some ten miles below defendant's refinery, contained a sodium chloride content of 73.6 grains per gallon, and that samples of water taken on the same day one mile south of the refinery contained only 22.2 grains per gallon. Another analysis of water taken at Comanche, disclosed 224 grains of sodium chloride per gallon, and water taken from Cow Creek on the same date a mile south of the refinery had a salt content of 4.7 grains per gallon. Referring to these analyses and others referred to in the record, the witness testified that if the sodium chloride in the creek water was not taken into consideration that the water did not contain sufficient other chemical properties which would be harmful to livestock.

At the conclusion of the evidence defendant moved for a directed verdict upon the ground that the evidence did not sustain the allegations of plaintiffs' petition. The motion was overruled and upon submission of the case a verdict was returned for plaintiffs and a judgment rendered thereon, and from the order overruling defendant's motion for a new trial, it appeals.

Although plaintiffs allege that defendant in the operation of its refinery used chemicals and substances that were harmful to animals, which substances defendant permitted to drain into Cow Creek, plaintiffs offered no evidence to support this allegation. On the contrary, the proof is without contradiction that the refinery maintained pits for impounding its effluent water so that by a process of oxidation the sulfides and sulfates would become free sulphur, which in the latter state, when commingled with the flowing water in Cow and Beaver Creeks, would not be injurious to livestock. Furthermore, the evidence discloses that the bad odor of the streams was attributable to organic matter in the raw sewage, and not from any chemical content in the water. The evidence is further without contradiction that enormous amounts of oil field brine from producing wells within the watershed below defendant's refinery contaminated the waters in these two streams, as has been indicated by reference to the evidence, supra.

Although the witnesses Crawford and Sparks, the Game Rangers, had taken

samples of water coming from the defendant's refinery as it entered Cow Creek, plaintiffs made no proof of the chemical contents thereof.

The Chief Chemist of the defendant, as well as Dr. Heller, of A & M College, discloses that various samples of water taken from Cow Creek below the refinery, had substantial quantities of sodium chloride (common salt) but did not contain any other chemicals in sufficient quantities to be harmful or injurious or toxic to livestock.

If the evidence thus produced by plaintiffs may be said to raise an inference or presumption that the defendant's effluent waters resulted in harmful pollution of the streams, then with like force it may be said the evidence that raw sewage in the streams also raises an inference or presumption that organic matter was the cause of plaintiffs' complaint. Likewise, the evidence with equal force presents an inference or presumption that the pollution of the streams was occasioned by oil producing wells making salt brine which drained into the streams.

The fact that defendant's effluent water drained into Cow Creek, standing alone, does not create an inference that the water contained poisonous elements injurious to livestock. In view of the further evidence that defendant impounded its effluent water in pits until the sulfides and sulfates therein by a process of oxidation became free sulphur, wholly fails to sustain plaintiffs' contention that the refinery water resulted in the injury to plaintiffs' livestock when it passed through the stream on plaintiffs' farm twenty-five miles below the refinery. Furthermore, the evidence of the chemist stands uncontradicted that the water coming from the defendant's refinery did not contain any chemical properties injurious to livestock. Furthermore, plaintiffs' own evidence is to the effect that they lost one cow in 1949 from Bangs disease, and that cattle abort from many causes other than the drinking of polluted water.

█ Where evidence fails to establish with reasonable certainty that damage resulted from some act of commission or omission by a defendant so charged, or that such acts resulted in the damage or injury complained of, a verdict and judgment thereon is not sustained by sufficient evidence and is therefore contrary to law.

█ In the Prest-O-Lite Co., Inc., v. Howery, 169 Okl. 408, 37 P.2d 303, the rule is announced as follows:

"In order to sustain a recovery in an action based on negligence, there must be a causal connection between the negligence averred and the injury received, and such causal connection cannot be established by basing inference upon inference, or presumption upon presumption."

The same rule is set forth in Ogden v. Baker, 205 Okl. 506, 239 P.2d 393.

In the Prest-O-Lite Co. case, supra, the plaintiff, as in the case at hand, sought to recover damages for loss of livestock and poultry by drinking water from a stream alleged to have been polluted by defendant in placing deleterious substances as chlorides, sulphates and insoluble silicates in the stream. Plaintiff in that case, as in the case before us, failed to show that the various substances mentioned or any other poisonous substances were in the water at the time the damage was occasioned. A recovery was sought there, as here, upon the hypotheses (a) that the water contained poisonous substances, and (b) that the animals and fowls died from drinking the water. In the opinion of the case we said that neither hypothesis is satisfactorily established by the evidence.

In the case of Moyer v. Foster, 205 Okl. 26, 234 P.2d 415, we held:

"A verdict by a jury may be based upon reasonable inferences from established facts, but may not be based upon inferences drawn from other inferences."

█ We are of the view and so hold that the evidence in plaintiffs' favor with all reasonable inferences to be drawn therefrom, wholly fails to support the allegations of their petition and is insufficient to support the verdict rendered, and

that, therefore, the trial court erred in overruling defendant's motion for a directed verdict.

The judgment is therefore reversed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON and WILLIAMS, JJ., concur.

ARNOLD, J., concurs in conclusion.

BLACKBIRD, J., dissents.